**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**$876,915.00 UNITED STATES CURRENCY, MORE or LESS,
Defendant–Appellee.**

No. 1077, Docket 89–6037.

United States Court of Appeals,
Second Circuit.

Argued April 6, 1989.

Decided May 4, 1989.

Steven E. Obus, Asst. U.S. Atty. (Benito Romano, U.S. Atty., Bart G. Van De Weghe, Asst. U.S. Atty., of counsel), for the U.S.

Richard A. Rehbock, New York City, for defendant-appellee.

Before KAUFMAN, PRATT and MINER, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

In *United States v. Monsanto*, 852 F.2d 1400 (2d Cir.1988) (in banc), this court held that the restraining provisions of 21 U.S.C. § 853 do not prohibit a criminal defendant from using "restrained assets to the extent necessary to pay legitimate (that is, non-sham) attorney's fees in connection with the criminal charges against him." Such attorney's fees were also declared to be "exempt from subsequent forfeiture pursuant to 21 U.S.C. § 853(c)." *Id.* at 1402.

In this case, we are asked to take the next precarious step along the forfeiture path and decide whether, to the extent necessary, legitimate attorney's fees needed to defend a criminal action are exempt from the *civil* forfeiture provisions of 21 U.S.C. § 881 when the forfeiture is based primarily on defendant's alleged criminal conduct, and when the civil proceeding is brought while the criminal action is pending.

In light of the unusual circumstances surrounding this case, particularly the need for an immediate trial in the pending criminal action, and recognizing some doubt as to *Monsanto*'s continued validity, *see United States v. Monsanto*, —— U.S. ——, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988) (certiorari granted); *Caplin & Drysdale, Chartered v. United States*, —— U.S. ——, 109 S.Ct. 363, 102 L.Ed.2d 352 (1988) (certiorari granted), we decline to decide this issue today; instead, we affirm the order appealed from without expressing any opinion as to its underlying rationale and we intend that our opinion be given no precedential effect.

## BACKGROUND

On December 14, 1987, Lionel Marquez and his wife were arrested and charged with conspiracy to distribute narcotics. Conducting a search of the Marquez home, law enforcement officers seized $876,915 ("the cash"), which was deposited thereafter in a government holding fund.

The Marquezes were indicted, and the case was assigned to Judge Gerard L. Goettel. Thereafter, the government requested, and Judge Goettel issued, a post-indictment restraining order on the cash, pursuant to 21 U.S.C. § 853(e)(1)(A). With the exceptions noted below, this order remains in effect today.

Almost seven months later, on July 12, 1988, and twelve days after this court sitting in banc held in *Monsanto* that legitimate attorney's fees are not subject to restraint or forfeiture under § 853, the government, alleging that the cash constituted proceeds from Marquez's illegal narcotics and gambling activities, commenced this civil in rem proceeding seeking forfeiture under 21 U.S.C. § 881. The action was assigned to Chief Judge Charles L. Brieant.

Copies of the verified complaint and notice letter were served upon Marquez and his counsel, who was subsequently granted an extension of time to respond. Nevertheless, on September 21, 1988, when Marquez had still failed to file a response, Chief Judge Brieant, who apparently was unaware that a related criminal proceeding was before Judge Goettel, entered default judgment and ordered that the cash be forfeited.

A few days later, Marquez filed a notice of claim to the forfeited funds, moved the court to set aside the default judgment, and requested that Chief Judge Brieant

stay the civil proceedings pending resolution of the forfeiture issues in the criminal case before Judge Goettel. After argument, Chief Judge Brieant granted Marquez's motion, reasoning that "the public interest in deciding cases on their merits[ ] control[led] over the finality of judgment" in this instance. Chief Judge Brieant also granted a subsequent motion by Marquez to transfer the civil forfeiture proceeding to Judge Goettel.

With both civil and criminal forfeiture actions before him, Judge Goettel heard argument on February 17, 1989, as to whether part of the cash should be released to pay legitimate attorney's fees in Marquez's pending criminal case. The government opposed the release and argued, *inter alia*, that the cash was not subject to release under *Monsanto* because the funds in this case were subject, not only to the criminal restraining provisions of § 853, but also to the civil forfeiture provisions of § 881. Analyzing the concurring opinions in *Monsanto*, the government contended that because § 881 contained specific provisions that § 853 did not, a majority of this court would uphold a civil forfeiture here, even if it deprived Marquez of the funds necessary to hire his counsel of choice. In response, Marquez argued that the government's action was nothing more than an end-run around *Monsanto*, and that the policies identified in that case worked to prohibit any forfeiture of assets—criminally or civilly—when those assets are needed to pay an attorney in a related criminal case.

After hearing these arguments, Judge Goettel held that *Monsanto* controlled and ordered that $100,000 be released to pay Marquez's attorney a retainer. Further, he directed that additional payments, if needed, could also be made from the funds. Judge Goettel agreed with the government that "if you take part of one [concurring opinion in *Monsanto*] for one purpose and part of one for another, you can come out with your present position." Nevertheless, the court concluded, "we have to live with the workable rule, which is that until the Supreme Court says otherwise we have to release funds in a reasonable amount to defendants whose assets are under forfeiture so they can hire a lawyer."

The government appeals.

## DISCUSSION

Fulfilling an academician's wildest dream and a jurist's worst nightmare, our *Monsanto* decision, consisting of eight separate opinions, evidences this court's uncertainty in dealing with the complicated and oft-times contradictory considerations that surround forfeiture of a criminal defendant's assets. In *Monsanto*, no concurring opinion could capture more than a three-judge plurality, *see* 852 F.2d at 1402 (sixth amendment violation) (three judges); 852 F.2d at 1411 (fifth amendment violation) (two judges); 852 F.2d at 1405 (statutory interpretation) (three judges), and in dissent, only four judges could agree that Monsanto's assets were properly restrained. 852 F.2d at 1412, 1420. Thus, at best, *Monsanto* is a rule without a reason; at worst, it is a misapplication of constitutional and statutory principles, effectively imposing a judicially created "attorney exception" on congressionally ordered restraint and forfeiture of the tainted assets of criminal defendants.

At issue before us today is whether our holding in *Monsanto* should be extended to civil forfeiture. This is a difficult determination. On the one hand, if *Monsanto*'s holding is read narrowly—as it probably should be in light of the varied concurrences upon which it rests—it would have no application to the case before us. Forfeiture here is based, not on the criminal provisions of § 853, but on the civil provisions of § 881, a forfeiture statute free from some of the problems raised in *Monsanto*'s concurring opinions. (*E.g.*, notice and an opportunity to be heard are clearly provided in § 881. *Cf.* 852 F.2d at 1411 (Miner, J., and Altimari, J., concurring) (voting for release of funds because § 853 provided no "notice and hearing constitutionally required as a matter of fifth amendment due process")).

On the other hand, this case, unlike a normal civil forfeiture where no criminal

action is pending, is startlingly similar to *Monsanto.* Although technically a civil case, this is not just civil forfeiture; on the contrary, Marquez finds himself realistically in the identical situation we encountered in *Monsanto:* He desires to hire an attorney of his choice to defend him against the criminal charges, but is unable to do so because the government has tied up all his assets in a forfeiture proceeding, claiming that the assets are proceeds of the very criminal activity underlying the indictment against which he is attempting to defend himself in the first place.

The government's actions in this case support this view. After Marquez's arrest, the government seemed content to rely on its § 853 criminal restraining order for seven months, until our holding in *Monsanto* required that some of the restrained funds be released. Only then did the government commence a civil forfeiture proceeding against the cash, arguably in an attempt to circumvent *Monsanto* and to prohibit any funds from being paid to Marquez's lawyer.

In short, resolution of this case is extremely difficult because, although the case technically rests on an entirely different forfeiture statute, it directly presents many of the perplexing issues, which this court considered, but was unable to resolve, in *Monsanto.* Is there a sixth amendment right to use alleged proceeds from criminal activity to hire an attorney of choice? Upon some showing that a defendant's assets were obtained illegally, can the government restrain those assets before trial? If not, and the assets are paid to a defense attorney for legitimate services, would the assets nevertheless be forfeitable after defendant is convicted?

Understanding the importance of these questions, and perhaps recognizing the confusing state of the law after our *Monsanto* effort, the Supreme Court has now agreed to decide these forfeiture issues. *United States v. Monsanto,* —— U.S. ——, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988) (certiorari granted); *see also Caplin & Drysdale, Chartered v. United States,* —— U.S. ——, 109 S.Ct. 363, 102 L.Ed.2d 352 (1988) (cer-

tiorari granted). Oral argument has already taken place, and, because a decision is expected in the next few months, we would ordinarily hold up our determination in this case, expecting some guidance from the Court on the critical issues before us.

Here, however, we do not have the luxury of even a short delay. Contrary to the national policy of providing speedy trials for criminal defendants, Marquez has already been held in jail without trial for over a year. Even worse, Marquez's wife, codefendant Eliza Marquez, who is not part of the current dispute, also remains incarcerated, while actively asserting her speedy-trial rights and fully prepared to proceed to trial. Judge Goettel has already determined that severance is not in the interest of justice, and has requested that this court act with all possible speed to dispose of this claim so that the case may proceed.

Weighing these concerns, we too find that, in the interest of justice, a resolution of the matter is necessary now. We therefore order Judge Goettel to treat the cash in this case as if it falls squarely under *Monsanto,* and direct the district court to take whatever steps necessary, within reason, to bring the criminal case to trial at the earliest possible date.

In so ordering, we intend that our decision have no precedential effect, either as to whether *Monsanto* applies to civil forfeiture provisions, or as to the proper role of civil forfeiture provisions when a parallel criminal proceeding is pending. We merely determine that on the facts before us, the money that was taken from Marquez during his arrest—money that was restrained under the criminal forfeiture provisions for several months—may be used by Marquez under the direction of the court to the extent necessary to pay legitimate attorney's fees in connection with the pending criminal charges against him. Any money paid to Marquez's defense counsel shall, in the event of Marquez's conviction, be exempt from subsequent forfeiture under 21 U.S.C. § 853(c).

The government makes several other arguments as to why the cash should not be

released, but many of them raise concerns which overlap with the issues discussed above. Accordingly, for the reasons already given, we reject them on the facts before us, and leave their resolution to another day.

IRVING R. KAUFMAN, Circuit Judge, concurring:

I agree with the conclusions reached by my brothers that the funds restrained pursuant to the provisions of § 853 may be used to pay legitimate attorney's fees in the criminal trial, and that any such money paid to Marquez's defense counsel shall be exempt from subsequent forfeiture under § 853(c). I write separately to emphasize that we should unambiguously affirm Judge Goettel's order issued pursuant to his jurisdictional powers under § 853—particularly since the court's authority premised upon § 881 is far from clear.

While the government would have us decide that our holding in *United States v. Monsanto*, 852 F.2d 1400 (2d Cir.1988), should not be extended to civil forfeiture actions brought pursuant to § 881, we should decline to consider that issue today. Rather, the question which compels our attention is whether the government may avoid the application of our decision in *Monsanto* by instituting a civil action when the same funds were subject to restraint under § 853.

We should reject the temptation to view this matter through the procedural blinders the government would have us wear. Judge Goettel saw the need to lift both the criminal and civil restraints that had been imposed upon the $876,915.00 in order to provide Marquez the relief he sought in the criminal action. We need only determine whether the district court had the authority to grant that relief by virtue of the court's power over the funds.

While resolution of this case may appear difficult—because it ostensibly rests solely on the court's civil jurisdiction under § 881—when viewed from the perspective of § 853(e)(1)(A) and our decision in *Monsanto*, the solution becomes obvious. Judge Goettel initially issued orders restraining the funds in the criminal action at the government's request. Under § 853 restraints may be imposed, "to preserve the availability of property ... for forfeiture *under this section....*" 21 U.S.C. § 853(e)(1) (emphasis supplied). As the majority properly noted, those restraints remain in effect today. The question of the court's jurisdiction in the civil action is much more problematic, however. It is not clear to what extent Chief Judge Brieant properly asserted jurisdiction over the money. *See, e.g., Penn. Gen. Casualty Co. v. Penn.*, 294 U.S. 189, 198, 55 S.Ct. 386, 390, 79 L.Ed. 850 (1935) (where two courts have concurrent jurisdiction over a *res*, the one taking possession first acquires exclusive jurisdiction to the extent necessary for the appropriate control and disposition of the property). This principle applies where a court must control the property to give effect to its orders, *see Lankenau v. Coggeshall & Hicks*, 350 F.2d 61 (2d Cir.1965), and is implicated when there exists a contemporaneous exercise of concurrent jurisdiction by federal courts. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed. 2d 483 (1976). A disposition of the funds by another court inconsistent with the existing orders of Judge Goettel and dictates of § 853 may, therefore, have been invalid.

It is clear that Judge Goettel first invoked jurisdiction over the cash pursuant to § 853, preparatory to *criminal* forfeiture. Forfeiture only occurs after an accused is convicted under § 853. In contrast, § 881(h) provides that title to property vests in the United States upon commission of an act giving rise to forfeiture under that section. The government's failure to inform Judge Brieant of developments in the criminal action is partially responsible for the simultaneous exercise of power over the $876,915.00 by judges acting pursuant to conflicting legal standards. The result has been the unseemly jurisdictional friction that courts should avoid. *Penn. Gen. Casualty*, at 196–98, 55 S.Ct. at 389–90.

In *Monsanto* we held that § 853 does not prohibit a criminal defendant from using assets otherwise subject to restraint, to pay legitimate attorney's fees. Whatever disagreements there may be with the un-

derlying rationales put forward for *Monsanto*, its holding, unless and until the Supreme Court instructs us otherwise, controls the outcome of this case.