UNITED STATES of America

v.

Eric **MILLAN–COLON,**
et al., Defendants.

No. S9 91 Cr. 685 (SWK).

United States District Court,
S.D. New York.

Oct. 8, 1993.

Mary Jo White, U.S. Atty. for the S.D. of N.Y., New York City by Dietrich L. Snell, Asst. U.S. Atty., Roland G. Riopelle, Asst. U.S. Atty., for U.S.

Gino Josh Singer, New York City, for defendant, Eric Millan–Colon.

Benjamin Brafman, New York City, for defendant, Vincent Basciano.

Maurice H. Sercarz, New York City, for defendant, Alfred Bottone.

David Breitbart, New York City, for defendant, Alfred Bottone, Jr.

Frank A. Lopez, New York City, for defendant, Anthony Bottone.

John Burke, Brooklyn, NY, for defendant, John O'Rourke.

Thomas White, New York City, for defendant, Ralph Rivera.

Neil B. Checkman, New York City, for defendant, Samanta Torres.

Sanford M. Katz, New York City, for defendant, Larry Weinstein.

David Greenfield, New York City, for defendant, Myles Coker.

Roger J. Schwarz, New York City, for defendant, Jose Colon.

Valerie Amsterdam, New York City, for defendant, Carmen Mendoza.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Eric Millan–Colon ("Millan") moves, pursuant to Rules 41(e) and 12(b) of the Federal

Rules of Criminal Procedure and the Second Circuit's holding in *United States v. Monsanto*, 924 F.2d 1186 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991) (*"Monsanto"*), for release of certain funds seized and forfeited by the Drug Enforcement Administration ("DEA") in connection with Millan's prosecution on narcotics charges, or, in the alternative, for a pretrial hearing to determine the continued propriety of restraining the funds. The Government opposes the motion, contending that the funds have been forfeited, and thus, are no longer subject to any claim for return.

### BACKGROUND [1]

Millan is the lead defendant in the above-captioned case, which charges him and his co-defendants with participating in a heroin distribution conspiracy known as "Blue Thunder." On July 30, 1991, Magistrate Judge Roberts issued arrest warrants, search warrants and civil seizure warrants, pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981, based on a criminal complaint and supporting affidavit executed by Special Agent David Dongilli of the DEA. On August 1, 1991, the DEA executed the civil seizure warrants for various assets and properties belonging to Millan, including: (1) Banco Popular account number 277729 (the "Banco Popular account"), which had a balance of $65,178.48; and (2) Manufacturers Hanover Trust Company bank account number 0140721730–65 (the "MHTC account"), which had a balance of $43,332.61. Also on August 1, 1991, the DEA learned that a certified check for $100,000 had been drawn on the seized MHTC account.[2] Accordingly, on August 5, 1991, a separate civil seizure warrant was issued for the $100,000 certified check.

On August 2, 1991, this Court entered a pre-indictment, *ex parte* restraining order, pursuant to the *criminal* forfeiture statute, 21 U.S.C. § 853(e)(2),[3] preventing the transfer or dissipation of certain assets held by various defendants, including the MHTC and Banco Popular accounts. The temporary restraining order provided, in relevant part, that Millan shall not

> directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose

---

**1.** For this statement of relevant, uncontested facts, the Court relies upon the Affirmation of Assistant United States Attorney Dietrich L. Snell, dated May 21, 1993 (the "Snell Aff."); the Declaration of William J. Snider, dated May 21, 1993 (the "Snider Dec."); and the Letter of Assistant United States Attorney Sharon Cohen Levin, to the Honorable Shirley Wohl Kram, of Sept. 14, 1993 (the "Levin Let.").

**2.** The Government presents two contradictory versions of this particular transaction. Originally, the Government indicated that on August 1, 1991, a certified check was *drawn* on the seized MHTC account. *See* Affidavit of Sharon Cohen Levin, sworn to on Aug. 2, 1992 (the "Aug. 2nd Levin Aff."), at ¶ 22; Affidavit of Sharon Cohen Levin, sworn to on August 16, 1991 (the "Aug. 16th Levin Aff."), at ¶ 36; and Government's Memorandum of Law in Opposition to Eric Millan's Motion to Release Property and in Support of Government's Cross–Motion for the Retention or Appointment of New Counsel, dated May 21, 1993, at 3. More recently, however, the Government has indicated that, on August 5, 1991, it was advised that Manufacturers Hanover Trust Company had received a $100,000 check *for deposit* in Millan's MHTC account. *See* Levin Let. at 2. Thereafter, Manufacturer's Hanover advised the Government that, as the check had been received by the bank after the account was seized, the bank had no authority to hold the check and would return it to the issuer. *Id.* The

bank indicated further that any pre-indictment, temporary restraining order, issued to restrain the MHTC account, did not apply to the $100,000 certified check. *Id.* As a result, on August 5, 1991, the Government applied to the Court for a separate civil seizure warrant for the $100,000 check. Although the Court has no independent evidence to determine which version of events is in fact correct, the Court is concerned that the Government has not only presented two conflicting scenarios, but also, has represented previously that their need for pre-trial restraints in this case was "especially acute" as the defendants were attempting to "dissipate" their assets. *See* Aug. 2nd Levin Aff. at ¶¶ 21, 22; Aug. 16th Levin Aff. at ¶¶ 32(b), 36, 40, 41–42. At least with respect to the $100,000 check, this allegation appears to be inaccurate.

**3.** Section 853(e)(2) provides, in relevant part, that: "[a] temporary restraining order ... may be entered upon application of the United States without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property ... would, in the event of conviction, be subject to forfeiture ... and that provision of notice will jeopardize the availability of the property for forfeiture."

of in any manner ... [a]ll money or other interest ... in any account, certificate or safe deposit box maintained at any main or branch office of the following financial institutions, including ... MANUFAC-TURES [sic] HANOVER ... BANCO POPULAR ...

*See* Temporary Restraining Order Pursuant to 21 U.S.C. § 853(e)(2) and 18 U.S.C. § 982, dated August 2, 1991, at 6–8. The restraining order was served on Banco Popular and Manufacturers Hanover on August 3, 1993.[4]

On August 14, 1991, a grand jury sitting in the Southern District of New York returned an indictment charging Millan with, among other things, participating in a heroin distribution conspiracy. The indictment also included a criminal forfeiture count for "all cash and monies of defendant[ ] ERIC MIL-LAN", derived as proceeds from, or used to facilitate drug violations, pursuant to 21 U.S.C. §§ 853(a)(1) and (a)(2). *See* Indictment, 91 Cr. 685 (SWK) ¶¶ 3(d), 3(g), 5(d) and 5(g).

On August 16, 1991, following the indictment of Millan and thirty-five other defendants on narcotics-related charges, the Government obtained a post-indictment, pre-trial restraining order, pursuant to the criminal forfeiture provision, 21 U.S.C. § 853(e)(1)(A),[5] preventing the transfer or dissipation of certain property interests held by Millan. This order also provided that Millan

shall not, without further order of this Court and upon seventy-two hours written notice to the United States, transfer, sell, assign, pledge, hypothecate, encumber, dissipate or move in any manner, property or other interest belonging to or owed to any of the defendants.

*See* Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A), dated August 16, 1991, at ¶ 1. Manufacturers Hanover and Banco Popular were both listed as two of the financial institutions where Millan maintained his accounts.[6] *Id.* at ¶ b(4) & b(14).

Two months after the entry of the August 16, 1991 criminal restraining order, the DEA began *administrative* forfeiture actions with respect to Millan's assets. Thus, on October 28, 1991, the DEA sent "notice of seizure" letters by certified mail, return receipt requested, to Millan at his home address and at the Metropolitan Correctional Center (the "MCC"), where he was incarcerated. These letters indicated that the Banco Popular and MHTC accounts would be forfeited pursuant to the civil forfeiture statute, 21 U.S.C. § 881. Although the letter sent to Millan's home was returned to the DEA with the

4. The Government contends that, as the Banco Popular and MHTC accounts had already been seized pursuant to the civil seizure warrants executed on August 1, 1991, no accounts were restrained at either bank pursuant to the criminal restraining orders. *See* Levin Let. at 2. The Court finds that this contention is belied by the TRO's express provisions, calling for the restraint of assets "in any account" including Manufacturers Hanover and Banco Popular, and the representations contained in the affidavits filed in support of the restraining orders. *See* Temporary Restraining Order Pursuant to 21 U.S.C. § 853(e)(2) and 18 U.S.C. § 982, dated August 2, 1991, at 7–8; *see also* Aug. 2nd Levin Aff. at ¶ 19 ("subject to forfeiture upon the conviction of the defendants is the defendants money and any other interest in any account ... maintained at ... MANUFACTURES [sic] HANOVER [and] BAN-CO POPULAR"); *id.* at ¶ 27 ("it is respectfully requested that a Temporary Restraining Order issue ... enjoining Eric Millan–Colon ... from transferring or dissipating any interest held ... in the [Manufacturer Hanover and Banco Popular bank accounts]"); Aug. 16th Levin Aff. at ¶ 21 ("Also subject to forfeiture upon the convic-

tion of the defendants is the defendants' money and any other interest in any account ... maintained at any main or branch office of ... MAN-UFACTURERS HANOVER [and] BANCO POPU-LAR"). As the Government has not submitted any evidence that the two accounts in question were excluded from the section 853 restraining orders, the Court finds that the assets were subject to *both* criminal and civil restraint.

5. Section 853(e)(1)(A) provides that "[u]pon application of the United States, the court may enter a restraining order ... upon the filing of an indictment or information charging a violation of this title or title III for which criminal forfeiture may be ordered under this section and alleging that the property ... would, in the event of conviction, be subject to forfeiture under this section...."

6. Although this restraining order was subsequently amended, *see* Amended Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A), dated February 5, 1993, the amendment did not change the restrained status of the assets at issues, *see id.* at ¶¶ b(4) & b(14).

envelope stamped "Authorized Time For Forwarding Address Has Expired," the letter sent to Millan at the MCC was received on November 2, 1991, as evidenced by the signed postal receipt card.

Beginning on November 6, 1991, and for three successive weeks thereafter, the DEA also published notice of the seizure of the Banco Popular and MHTC accounts in *USA Today*, pursuant to 21 C.F.R. § 1316.75. The "notice of seizure" letters and newspaper publication explained the procedure for contesting the forfeiture action in United States District Court, including the option of filing a petition for remission or mitigation, and also stated that November 26, 1991, was the last day to file a claim contesting the forfeiture of the seized funds.

On December 12, 1991, when no claim had been received regarding either account, the DEA issued a Declaration of Forfeiture as to each account, reflecting the administrative forfeiture of the accounts to the United States, pursuant to 19 U.S.C. § 1609.[7]

As to the $100,000 certified check drawn on the MHTC account, on November 4, 1991, the DEA sent Millan a "notice of seizure" letter by certified mail, return receipt requested. Apparently, this letter was received as the postal receipt card was returned. Beginning on November 6, 1991, and for three successive weeks thereafter, the DEA published a notice of seizure of the $100,000 certified check in *USA Today*, pursuant to 21 C.F.R. § 1316.75. On April 2, 1993, when no claim had been filed regarding the $100,000 check, the DEA issued a Declaration of Forfeiture, administratively forfeiting the funds pursuant to 19 U.S.C. § 1609.

Claiming to need additional funds to pay his attorney's fees in his criminal case, Millan now seeks the release of $208,511.09, consisting of the $100,000 certified check and the

funds contained in the Banco Popular and MHTC accounts. The Government opposes Millan's request on the grounds that the seized funds were not merely restrained, but also forfeited, pursuant to the civil forfeiture provisions set forth in 21 U.S.C. § 881,[8] and that Millan has been afforded a full and fair opportunity to challenge that forfeiture. According to the Government, as Millan failed to exercise his right to challenge the forfeiture in a timely fashion, the funds are no longer available for release.

## DISCUSSION

■ There are two types of forfeiture proceedings in federal law: criminal and civil. The first type of proceeding, criminal forfeiture, is an action against the defendant in a criminal case and is imposed as a sanction following the defendant's conviction. *See* 21 U.S.C. § 853. Specifically, section 853(a) provides that a person convicted of offenses contained in an indictment "shall forfeit ... any property" derived from the commission of the charged offenses. 21 U.S.C. § 853(a); *United States v. Monsanto*, 491 U.S. 600, 606–09, 109 S.Ct. 2657, 2662, 105 L.Ed.2d 512 (1989). If the defendant is found guilty of the underlying offense, a special verdict must be returned with respect to the forfeiture allegations and a judgment of forfeiture entered.

The second type of forfeiture proceeding is civil. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value" traceable to narcotics trafficking may be civilly seized by the Government and forfeited. Similarly, 18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of any property "involved in a transaction or attempted transaction" in violation of federal money laundering statutes, 18 U.S.C. §§ 1956, 1957. For property valued at $500,-

7. Section 1609 provides that "[i]f no ... claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the ... merchandise ... forfeited, and shall ... dispose of the same according to law, and shall deposit the proceeds ... after deducting the expenses described in section 613 [19 U.S.C. § 1613], into the Customs Forfeiture Fund."

8. Section 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter ..." shall be subject to civil forfeiture.

000 or less, the Government may follow an administrative forfeiture process. *See* 19 U.S.C. § 1607(a) (as amended); *Onwubiko v. United States*, 969 F.2d 1392, 1398 (2d Cir. 1992).

▇▇▇▇ An administrative forfeiture proceeding begins with publication by the DEA of a notice of seizure and intent to forfeit property and transmission of written notice of seizure to "each party who appears to have an interest in the seized property." *See* 19 U.S.C. § 1607; *Onwubiko v. United·States*, 969 F.2d at 1398. Once the administrative forfeiture proceeding has commenced, a claimant has twenty days from the first publication of notice to contest the forfeiture by filing a claim and cost bond. *See* 28 C.F.R. §§ 9.1–9.7; 21 C.F.R. §§ 1316.71–.81; *Onwubiko v. United States*, 969 F.2d at 1398. The filing of a claim and cost bond halts the administrative process and converts the proceeding into a civil forfeiture action in federal district court. *See* 19 U.S.C. § 1608; 21 C.F.R. § 1316.78; *Onwubiko v. United States*, 969 F.2d at 1398. If no timely claim and cost bond is filed within the twenty day period, however, the property is administratively forfeited, pursuant to 19 U.S.C. § 1609. *See Onwubiko v. United States*, 969 F.2d at 1398; *United States v. One Tintoretto Painting Entitled "The Holy Family with St. Catherine and Honored Donor"*, 691 F.2d 603, 608 (2d Cir.1982). Thereafter, the claimant's sole recourse is to petition the DEA's Asset Forfeiture Section, within thirty days of receiving notice, for "remission" (or "pardon") of the forfeiture. 28 C.F.R. § 9.3; *Onwubiko v. United States*, 969 F.2d at 1398.

▇▇▇ Once this administrative process begins and the defendant fails to file a claim or cost bond, a federal court lacks jurisdiction to review the merits of any administrative forfeiture decision, *see United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 480 (2d Cir.1992), unless the administrative forfeiture proceeding is procedurally deficient, *see Onwubiko v. United States*, 969 F.2d at 1398. Where the government forfeits the property "accidentally, fraudulently, or improperly," however, the

district court retains jurisdiction to correct the impropriety. *Onwubiko v. United States*, 969 F.2d at 1398; *see also Scarabin v. Drug Enforcement Admin.*, 919 F.2d 337, 338 (5th Cir.1990) (holding that district court's review is "limited to determining whether the agency followed the proper procedural safeguards when it declared [defendant's] property summarily forfeited.").

In the instant case, the DEA published notice of seizure and sent Millan notice for each of the three seized assets, in accordance with 19 U.S.C. § 1607. *See* Snider Dec. at ¶¶ 4(d), 5(b), 6(d). Thereafter, Millan failed to file a claim and cost bond as to any of the assets within the allotted twenty day period, or to submit a petition for remission pursuant to 28 C.F.R. § 9.3. Accordingly, the funds were administratively forfeited pursuant to 19 U.S.C. § 1609. *Id.* at ¶¶ 4(f), 5(h), 6(g). At that point, the administrative process was complete and the forfeiture final. Thus, unless Millan shows that the property was forfeited "accidentally, fraudulently or improperly," *see Onwubiko v. United States*, 969 F.2d at 1398, the Court lacks jurisdiction to review the DEA's administrative decision.

Millan attempts to rebut the conclusion that the Court lacks jurisdiction by arguing that (1) pursuant to 21 U.S.C. § 853(e)(1), the money can not be forfeited until, and unless, Millan is convicted; (2) as this Court has exclusive control, and thus, jurisdiction over the property, the DEA did not· have possession of the *res* and could not have entered a declaration of forfeiture; (3) the Government's various actions against Millan, including the instant administrative forfeiture, a criminal prosecution and an unrelated civil forfeiture proceeding against property located in Puerto Rico, violate concepts of fundamental fairness; (4) the procedures used to challenge the administrative forfeiture proceeding violate Millan's Fifth Amendment protection against self-incrimination; and (5) the forfeiture strips Millan of funds necessary to retain counsel, and thus, violates the Sixth Amendment of the United States Constitution.

## A. Pre–Conviction Administrative Forfeiture of Criminally Restrained Assets

The first argument Millan raises in support of releasing the funds in question is that

the criminally restrained funds cannot be civilly forfeited prior to conviction. Relying on the criminal forfeiture statute, 21 U.S.C. § 853(e)(1), which states in relevant part that:

> the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property ... *for forfeiture under this section,* (emphasis added),

and 21 U.S.C. § 853(e)(2), which reads that:

> A temporary restraining order under this section may be entered ... if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, *in the event of conviction,* be subject to forfeiture under this section.... (emphasis added),

Millan argues that property seized, pursuant 21 U.S.C. § 853, may not be forfeited before a criminal conviction.

After examining the relevant criminal and civil forfeiture statutes, 21 U.S.C. §§ 853 and 881, which do not address whether the criminal restraint of property precludes a subsequent civil forfeiture action, and finding no case law on point, the Court concludes that the issue before it, namely, whether assets restrained under a criminal forfeiture statute may be simultaneously forfeited civilly, is apparently one of first impression. Nevertheless, as the issue was raised, but not decided, in *United States v. $876,915.00 United States Currency, More or Less,* 874 F.2d 104 (2d Cir.1989) ("*$876,915.00* "), the Court looks to that opinion for guidance.

In *$876,915.00,* Lionel Marquez and his wife were arrested and charged with conspiracy to distribute narcotics. During a search of the Marquez home, law enforcement officers seized $876,915 in cash, which was then deposited in a government holding fund. *Id.*

at 105. Following the Marquezes' indictment, the government requested a post-indictment, criminal restraining order of the money seized, pursuant to 21 U.S.C. § 853(e)(1)(A). *Id.* Judge Goettel of this Court granted the Government's request. *Id.* Seven months later, after the Second Circuit held in *United States v. Monsanto,* 852 F.2d 1400 (2d Cir.1988) (en banc), that money needed for legitimate attorney's fees may not be criminally restrained or forfeited under § 853,[9] the government commenced a separate civil *in rem* proceeding in front of then Chief Judge Brieant, seeking civil forfeiture, under 21 U.S.C. § 881, of the criminally restrained assets. *Id.* Thereafter, when Marquez failed to respond in the civil proceeding, a default judgment was entered by Judge Brieant and the cash forfeited. *Id.*

A few days later, Marquez filed a notice of claim to the forfeited funds, moved the court to set aside the default judgment, and requested that the civil forfeiture be stayed. *Id.* at 105–06. Chief Judge Brieant granted the motion and consolidated the civil and criminal forfeiture proceedings before Judge Goettel. *Id.* at 106. Following oral argument, Judge Goettel then released $100,000 from the seized funds to pay legitimate counsel fees for Marquez's defense of the criminal proceeding. *Id.*

Without reaching "whether *Monsanto* applies to civil forfeiture provisions, or ... the proper role of civil forfeiture provisions when a parallel criminal forfeiture proceeding is pending," *id.* at 107, the Second Circuit found that the money restrained under the criminal forfeiture provisions could be used by Marquez to the extent necessary to pay legitimate attorney's fees in connection with the pending criminal charges against him. *Id.* Writing separately, Judge Kaufman stressed that "the question which compels our attention" is not whether the assets were properly

---

**9.** *See United States v. Monsanto,* 852 F.2d 1400 (2d Cir.), *cert. granted,* 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988), *rev'd,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), *on remand,* 924 F.2d 1186 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). On appeal, the Supreme Court concluded that "assets in a defendant's possession may be restrained [pursuant to a criminal restraining or-

der] based on a finding of probable cause to believe that the assets are forfeitable." *See United States v. Monsanto,* 491 U.S. at 615, 109 S.Ct. at 2666. Thereafter, on remand, the Second Circuit held that due process requires a pre-trial, post-attachment hearing in order to continue restraining assets needed to retain counsel of choice. *United States v. Monsanto,* 924 F.2d at 1191.

released to retain an attorney under *Monsanto*, but rather, "whether the government may avoid the application of our decision in *Monsanto* by instituting a civil action when the same funds were subject to restraint under § 853." *Id.* at 108. Addressing this issue, Judge Kaufman suggested that, once the criminal restraint was in place, pursuant to § 853, the funds were made available and preserved for forfeiture under that section. *Id.* Thus, Judge Brieant's attempt to forfeit the funds civilly was, in the words of Judge Kaufman, "problematic." *Id.* at 108 (citing *Pennsylvania General Casualty Co. v. Penn.*, 294 U.S. 189, 198, 55 S.Ct. 386, 390, 79 L.Ed. 850 (1935) (for the proposition that where two courts have concurrent jurisdiction over a *res*, the court first taking possession acquires exclusive jurisdiction necessary to control and dispose of the property)). Accordingly, as Judge Goettel first took control of the property pursuant to § 853, "[a] disposition of the funds by another court inconsistent with the existing orders of Judge Goettel and dictates of § 853 may, therefore, have been invalid." *Id.* at 108.

Millan attempts to use the dicta of *$876,-915.00* to support his argument that, once this Court issued a criminal restraining order under § 853 over the funds at issue (1) it had exclusive *in rem* jurisdiction barring any other court, or the DEA, from acting with respect to the property; and (2) the assets could only be forfeited following criminal conviction. However, Millan attempts to read too much into Judge Kaufman's concurring opinion. First, *$876,915.00* is a problematic case upon which to rest any such argument as the Second Circuit expressly intended that their opinion have no precedential effect. *See $876,915.00*, 874 F.2d at 107. Second, contrary to Millan's interpretation, Judge Kaufman did not determine that the issuance of a protective order, pursuant to 21 U.S.C. § 853, vests the issuing court with *in rem* or *quasi in rem* jurisdiction over the property at issue.[10] Rather, focusing on the government's attempt to circumvent *Monsanto*,

Judge Kaufman merely questioned whether two courts could properly exercise concurrent jurisdiction over property under both sections 853 and 881. *Id.* at 108.

The Court has found one case, however, which, while not precisely on point, lends support to defendant's basic premise, i.e., that the government ought not to simultaneously conduct civil and criminal forfeiture proceedings. In *United States v. Nichols*, 654 F.Supp. 1541 (D.Utah 1987) (*"Nichols"*), *rev'd on other grounds*, 841 F.2d 1485 (10th Cir.1988), defendants, charged with conspiring to distribute controlled substances and facing criminal forfeiture of their assets, sought an order exempting their property from criminal restraint, on the ground that the property was needed to pay attorneys' fees. *Id.* at 1544. In response to the defendants' motions, the government indicated, for the first time, that the property seized would not be forfeited through the criminal forfeiture provisions of 21 U.S.C. § 853. *Id.* at 1559. Rather, the government claimed that all property, other than that specifically listed in the criminal indictment, was being forfeited administratively in accordance with 21 U.S.C. § 881(a) and (d) and 19 U.S.C. §§ 1607–1609. *Id.* Thus, according to the government, the defendants' motion for exemption would not apply to the items being civilly forfeited under § 881. *Id.* at 1560.

Rejecting the government's argument, the court cited *United States v. Dunn*, 802 F.2d 646 (2d Cir.1986), *cert. denied*, 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987)—in which the Second Circuit held that sections 853 and 881 are not mutually exclusive, and that the government may commence civil forfeiture *after* criminal proceedings are unsuccessful—and found it distinguishable on the grounds that:

> [*Dunn* ] did not hold that the government may proceed against a defendant's property under both section 881 and section 853 *at the same time* and while the criminal

---

10. In fact, according to the legal fiction of forfeiture actions, criminal forfeitures are brought by an *in personam* proceeding against the person, i.e., the defendant, whereas civil forfeitures are brought *in rem* against the property itself on the

basis that the property has committed some wrong. *United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d at 476.

prosecution on the substantive offenses is proceeding.

*Id.* (emphasis added). Expressing concern that the government, by pursuing both civil and criminal forfeiture proceedings, was seizing all the defendants' assets and thus, denying the defendants any realistic chance of retaining counsel of choice, the court remarked further:

> The forfeiture provisions, as originally set out in the indictment in this case, and as echoed in the subsequent restraining order, contemplate forfeiture of all assets that the government could seize from the defendants. Its language is broad and all-encompassing. Its purpose is clearly punitive. *By allowing the government to proceed as they desire here is to give them ultimate control over a defendant's assets.* When the asset's value exceeds $10,000, the easier route for the government is to proceed criminally. For anything under $10,000, they simply choose any administrative procedure that may not require court action. In either case, the defendant is denied the use of his assets to pay for his attorney.

*Id.* at 1560–61 (emphasis added); *accord United States v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896, 905 (2d Cir.1992) ("because of the troublesome fifth amendment problems potentially generated by the government's use of the civil forfeiture statutes, district courts—absent some sort of extraordinary situation—should exercise their discretion to stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants."); *United States v. $39,000 in Canadian Currency,* 801 F.2d 1210, 1219 n. 7 (10th Cir. 1986) ("Although the issue is not squarely presented in this case, the wholesale use of civil forfeiture proceedings causes us grave concern when the Government has clearly focused its law enforcement energies and resources upon a person and attempts to restrain his property in anticipation of formal criminal proceedings."). The *Nichols* court

then held that the government's use of administrative forfeiture under 21 U.S.C. § 881, while simultaneously seeking criminal forfeiture under 21 U.S.C. § 853, is unconstitutional if it interferes with a defendant's ability to retain counsel in the related criminal prosecution.[11] *Id.*

█ Although the Court is not willing to reach the result in *Nichols* and find that the Government may not simultaneously commence both civil and criminal forfeiture proceedings involving *different* property, the Court is of the opinion that the Government may not initiate criminal forfeiture proceedings against certain property, and then, administratively forfeit the *same* property. *See, e.g., United States v. Real Property in Township of Charlton,* 764 F.Supp. 1219, 1221 (E.D.Mich.1991) (decided on a different basis) ("the government may not initiate judicial forfeiture proceedings against property worth less than $100,000 and then begin administrative forfeiture proceedings against the same property [but rather] must elect between one of the two proceedings."). As Judge Kaufman suggested in *$876,915.00,* once the funds are subject to restraint under § 853, a disposition of that property by any other means, inconsistent with the orders of this Court and section 853's explicit provisions, is inappropriate.

The Court's position is supported by the language of 21 U.S.C. § 853(j), which provides that the civil forfeiture provisions of 21 U.S.C. § 881(d) shall apply to the criminal forfeiture provision (§ 853) *except* where the two provisions are inconsistent. Unlike section 881, section 853 provides that restrained assets will be forfeited in the event of conviction. 21 U.S.C. § 853(a); H.R.Rep. No. 1030, 98th Cong. 204 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3387 ("The sole purpose of the bill's restraining order provision ... is to preserve the status quo, i.e., to assure the availability of the property pending disposition of the criminal case."). In fact, the Government concedes that "[t]he

---

11. This decision was later rejected by the Tenth Circuit to the extent that the criminal forfeiture was held unconstitutional. In reversing, the Tenth Circuit concluded that while "we do not imply that we sanction 'the wholesale use of civil forfeiture proceedings' in the criminal context ... [w]e hold only that neither criminal nor civil forfeiture violates the right to choice of counsel." *United States v. Nichols,* 841 F.2d 1485, 1509 (10th Cir.1988) (citation omitted).

assets covered by the proposed restraining order are subject to forfeiture *upon conviction* of the defendants for narcotics felonies." Aug. 16th Levin Aff. at ¶ 1 (emphasis added); *see also id.* at ¶ 17 ("*Upon conviction* of the defendants and a forfeiture verdict, the Government will be entitled to [sic] as a matter of law to forfeiture of certain property set forth in the Indictment.") (emphasis added); *id.* at ¶ 19 ("Such properties are subject to forfeiture *upon the defendants' convictions*") (emphasis added); *id.* at ¶ 21 (the properties subject to forfeiture "*upon the conviction* of the defendants is the defendants' money and any other interest in any account, certificate or safe deposit box maintained at any main or branch office of the following financial institutions, including ... Manufacturers Hanover and Banco Popular.") (emphasis added); *id.* at ¶ 28 ("*upon their convictions*, the Government will be entitled to a judgment against each defendant of forfeiture in excess of $100,000,000.00.") (emphasis added); *id.* at ¶ 42 ("By entry of this restraining order, the Government merely seeks to maintain the *status quo* and avoid dissipation of assets that will be forfeited to the United States *upon a verdict.*") (emphasis added).

Unlike section 853, however, section 881 provides that as title to the property vests in the United States upon commission of the act giving rise to forfeiture, *see* 21 U.S.C. § 881(h), the property may be civilly seized and then forfeited "promptly" without first obtaining a criminal conviction, *see* 21 U.S.C. § 881(b). *See also United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d at 476 (in a civil forfeiture proceeding, the government need not establish that the owner committed a crime, but rather, must only demonstrate probable cause establishing a nexus between the seized property and illegal drug activity); *$876,915.00*, 874 F.2d at 108 (recognizing that §§ 853 and 881 operate under different legal standards); *Cf. United States v. Schmalfeldt*, 657 F.Supp. 385, 395 (W.D.Mich.1987) (no inconsistency found between 21 U.S.C. §§ 853 and 881 where defendant is *not* convicted, as § 853 forfeiture could not take place and subsequent § 881 civil forfeiture could then proceed). Accordingly, section 881's provision

for forfeiture before conviction would appear to be inconsistent with section 853, and thus, inappropriate where assets are restrained criminally.

Furthermore, the Court is swayed by Judge Kaufman's belief that it is unseemly for two courts to vie for control of the same property at the same time. *See $876,915.00*, 874 F.2d at 108. The Court finds that this conflict is no less unseemly, merely because a court and a federal agency are attempting to simultaneously control the same property. In fact, in the case at hand, given that the DEA never had exclusive legal control over the *res*, as required for *in rem* jurisdiction, the Court questions whether the DEA had authority to forfeit Millan's funds.

█ As discussed previously, *see* footnote 10, *supra*, at 15, administrative forfeitures such as the one here, are *in rem* proceedings against the property. *United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d at 476. "Thus, like a court entertaining an *in rem* action, the federal agency undertaking the administrative forfeiture proceeding must have physical control over the property to be forfeit." *Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 993 (5th Cir.1992). Here, however, the Court had issued a temporary criminal restraining order on August 2, 1991, preventing the transfer, sale, assignation or other disposition of Millan's assets, including funds held in the Banco Popular and MHTC accounts. Three days later, *after* the criminal restraining order was imposed and the funds frozen, the DEA then civilly seized the $100,000 and commenced administrative forfeiture proceedings. Although the Government would have the Court believe that the August 2, 1991 criminal restraining order did not apply to the $100,000 check, and thus, did not divest the DEA of *in rem* jurisdiction, the Court is unable to make that determination as the check may, or may not have been deposited in the MHTC account. *See* footnote 2, *supra*, at 2–3 (noting that the Government has represented both that the $100,000 was being drawn from and deposited to the MHTC account). Thus, given the state of the record, the DEA's authority to

seize this money and then forfeit it, is far from clear.[12]

Moreover, the Court is unconvinced by the Government's contention that "[t]o the extent that the Court in *$876,915* questioned the propriety of parallel civil and criminal forfeiture proceedings, the Second Circuit in the instant case has specifically endorsed the use of contemporaneous civil and criminal actions in this case." Levin. Let. at 4 n. 2 (citing *United States v. Millan,* 2 F.3d 17 (2d Cir. 1993) ("*Millan*"). In *Millan,* the Second Circuit upheld this Court's denial of defendants Alfred V. Bottone, Anthony Bottone and Alfred Bottone, Jr.'s motion to dismiss the indictment on the grounds of double jeopardy. After an indictment was filed on August 14, 1991, charging the defendants with, *inter alia,* participation in a narcotics distribution conspiracy, the Government commenced civil forfeiture against the properties and bank accounts of Alfred Bottone, Jr. *Id.,* 2 F.3d at 18. Thereafter, on January 20, 1993, the Bottones entered into an agreement with the Government, wherein the Government relinquished its claim to $101,000 to enable the Bottones to pay attorneys' fees arising from their defense of both the civil and criminal actions. *Id.* In return, the Bottones relinquished any claim to $240,000 in assets, and the civil suit was dismissed. *Id.,* 2 F.3d at 18. On February 23, 1993, the Bottones moved to dismiss the criminal indictment on the grounds that the agreement entered into with the Government was a prior punishment, precluding the Government, under the Double Jeopardy Clause of the Fifth Amendment, from continuing to prosecute them. *Id.,* 2 F.3d at 18. Affirming this Court's February 25, 1993 Order, the Second Circuit denied the Bottones' motion, finding instead, that "the government has employed a single proceeding to prosecute the Bottones, and therefore, the proscription of the Double Jeopardy Clause does not apply." *Id.,* 2 F.3d at 20.

The Second Circuit did not reach the issue presented here, however, and thus, did not address whether assets criminally restrained by way of 21 U.S.C. § 853 may be simultaneously forfeited civilly pursuant to 21 U.S.C. § 881. In fact, in *Millan,* the civil suit against the Bottones' assets was dismissed and the assets released by way of a modified post-indictment restraining order. *See* Stipulation and Order, dated Jan. 20, 1993; *see also* Amended Restraining Order Pursuant to 21 U.S.C. § 853(e)(1)(A), dated Feb. 5, 1993; Declaration of Assistant United States Attorney Ellen Silverman Zimiles, executed on Feb. 5, 1993, at ¶¶ 4(f), 4(g), & 4(h). Thus, the Second Circuit's holding that the Government may seek both civil and criminal sanctions against one individual without triggering Double Jeopardy concerns, *see Millan,* 2 F.3d at 21, sheds no light on the matter at hand.

Similarly, *United States v. Schmalfeldt,* 657 F.Supp. 385, 394 (W.D.Mich.1987) is distinguishable in that administrative proceedings, brought against property alleged to be criminally forfeitable pursuant to a superseding indictment, were never completed. In *Schmalfeldt,* the DEA commenced administrative forfeiture proceedings against two parcels of real estate which were also forfeitable under 21 U.S.C. § 853(a)(2). *Id.* at 386. Following his conviction, the defendant moved to dismiss criminal forfeiture proceedings involving the same two parcels of real estate on the ground that concurrent civil and criminal forfeiture proceedings violate due process. *Id.* at 387, 391. Pointing to 21 U.S.C. § 881(i), which indicates that civil and criminal forfeiture proceedings may be pending at the same time and provides a method for first proceeding with criminal forfeiture,[13] the government responded that the civil proceedings were stayed. *Id.* at 391–92. Construing the defendant's argument as one of double jeopardy or collateral estoppel, the court held that, as the civil forfeiture proceedings commenced by the government un-

---

**12.** The Court does not reach the issue of whether the DEA had *in rem* jurisdiction to forfeit the MHTC and Banco Popular accounts, as those assets were first civilly, and then criminally, seized.

**13.** Section 881(i) provides specifically that "[t]he filing of an indictment or information alleging a violation of this title ... which is also related to a civil forfeiture proceeding under this section shall, upon motion of the United States and for good cause shown, stay the civil forfeiture."

der 21 U.S.C. § 881 were never completed—and no judgment entered—subsequent criminal forfeiture proceedings involving the same property were not violative of due process. *Id.* at 393. Hence, *Schmalfeldt*, like *Millan*, is not controlling as it does not address whether civil forfeiture of assets, which remain subject to criminal restraint under 21 U.S.C. § 853, violates due process.

As a final note, the Court is concerned by the Government's virtually unchecked use of the forfeiture statutes and its ability to freeze assets criminally, without notice and a hearing, and then, forfeit them administratively without the Court's review. This result is particularly troublesome when, as here, the forfeiture provisions in the indictment and restraining orders, reach nearly all property belonging to the defendant, and are able to strip him of funds necessary to retain counsel. As the record is devoid of any evidence of express Government misconduct, however, the Court's concern is noted only in passing. Thus, the Court merely determines that on the facts before it, as long as a criminal restraining order remains in effect pursuant to 21 U.S.C. § 853, assets restrained pursuant to that section may be forfeited in the event of conviction, and not at some earlier time by administrative action. Accordingly, as Millan has not been tried in this case, nor convicted of any crime in this action, the assets have not been forfeited pursuant to 21 U.S.C. § 853, and instead, remain frozen.

## B. The *Monsanto* Claim

Having determined that the funds remain restrained under 21 U.S.C. § 853 and not forfeited pursuant to § 881, the Court must next decide whether Millan is entitled to a *Monsanto* hearing to address the continued propriety of the restraint in question.

■ In *Monsanto*, the Government, in connection with an indictment charging Peter Monsanto with RICO, narcotics, and firearms violations, obtained an *ex parte* restraining order under 21 U.S.C. § 853(e)(1)(A), prohibiting Monsanto from directly or indirectly transferring or encumbering a home, an apartment, and $35,000 cash alleged to be property obtained from narcotics offenses.

*Monsanto*, 924 F.2d at 1189. In August 1987, Monsanto moved to vacate or modify the restraining order, seeking permission to use the restrained assets to retain trial counsel. *Id.* Following remand by the Supreme Court, *see United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), the Second Circuit held that "after an ex parte, post-indictment, pretrial restraining order is entered pursuant to 21 U.S.C. § 853(e)(1)(A) (1988), 'a pre-trial adversary hearing is required where the question of attorney's fees is implicated.'" *United States v. Monsanto*, 924 F.2d at 1191 (quoting *United States v. Monsanto*, 836 F.2d 74, 82 n. 7 (2d Cir.1987)). At that hearing, the Government need establish by probable cause that (1) the defendant committed crimes that provide a basis for forfeiture; and (2) the assets specified in the indictment are properly forfeitable. *Id.* at 1195.

> [T]he only issue to be considered would be the question of probable cause. If the government succeeds in establishing probable cause, the policies favoring forfeiture, ... preclude any constitutional requirement that equities be further weighed or balanced on the issue of making funds available to retain counsel.

*Id.* at 1196 (citation omitted).

In the case at hand, Millan's assets, which he claims are necessary in order to retain private counsel of his choice, are currently restrained pursuant to an "ex parte, post-indictment, pretrial restraining order." *Id.* at 1191. Thus, this case appears to raise the same concerns as *Monsanto*, namely, whether the Government can tie up a defendant's assets in a forfeiture proceeding, claiming that the assets are proceeds of the very crime against which the defendant is attempting to defend himself, and thus, preclude a defendant from hiring an attorney of his choice. *See $876,915.00*, 874 F.2d at 107 (construing *Monsanto*).

■ The Government argues, however, that Millan received notice of the administrative proceedings, yet failed to challenge the forfeiture of the accounts in question until after he sought to retain new counsel. Thus, the Government contends that, in the inter-

est of "finality," Millan should be deemed to have waived his right to challenge the forfeiture proceedings by way of a *Monsanto* hearing. The Court disagrees.

A close reading of the *Monsanto* opinion indicates that the Second Circuit was concerned, not only that the defendant's sixth amendment right to counsel be preserved, but also, that the defendant not be deprived of his property without an opportunity to be heard. *Monsanto*, 924 F.2d at 1195.

> The inherent risk in allowing the deprivation of a property interest through ex parte proceedings accounts for the general rule that a prior adversary hearing is required, absent special circumstances. It follows that there is a substantial risk of an erroneous deprivation of a defendant's significant property interest in the absence of an opportunity to be heard after the ex parte entry of a restraining order under section 853(e)(1)(A).

Accordingly, the Second Circuit found that as "[a] fundamental requirement of due process is 'the opportunity to be heard,'" *id.* (quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)), lack of an adversarial hearing on the restraint issue would constitute a violation of due process. *Id.* The Second Circuit found further, however, that the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Id.* at 1195 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

In the case at hand, Millan was provided notice and an opportunity to contest the forfeiture of the seized assets in 1991 when the assets were first seized. Notice was provided by way of "notice of seizure" letters indicating that the Banco Popular and MHTC accounts would be forfeited. *See* Snider Dec. at ¶¶ 4(d), 5(b), 5(f). The DEA also published notice of the seizure and pending forfeiture in *USA Today. Id.* at ¶¶ 4(e), 5(e), 6(f). The "notice of seizure" letters and newspaper publications explained the procedure for contesting the forfeiture action in United States District Court, and also stated that November 26, 1991, was the last day to file a claim contesting the forfeiture of the seized funds. *Id.* At no point, however, did Millan challenge the forfeiture of the accounts in question during the pendency of the DEA's administrative forfeiture proceedings.

Subsequently, after the time to oppose the DEA's actions had expired and the forfeiture was complete, Millan's counsel was indicted and then convicted of federal felony charges in the District of New Jersey. Thereafter, at a conference held before the Court on April 7, 1993, Millan reported that he was in the process of interviewing new counsel, but was not financially able to retain any of them. Millan represented further that his former counsel had not been paid. Millan then filed the instant motion seeking release of $208,511.09 in order for him to retain substitute counsel to defend the pending criminal action.

Although, as the Government maintains, Millan was provided notice and an opportunity to be heard back in 1991, the Court finds that this opportunity for a hearing was not meaningful in the context of *Monsanto*. *See Bell v. Burson*, 402 U.S. 535, 541–42, 91 S.Ct. 1586, 1590–91, 29 L.Ed.2d 90 (1971) ("[t]he hearing required by the Due Process Clause must be 'meaningful,' and 'appropriate to the nature of the case.'") (citations omitted). In 1991, when the assets were first seized, Millan had funds sufficient to retain private counsel. Since that time, however, Millan's counsel has withdrawn from the case. As a result, Millan now finds himself in the identical situation encountered in *Monsanto*—he desires to hire an attorney to defend him against the criminal charges, but is unable to do so because his assets are tied up in a forfeiture proceeding. In this light, the opportunity for an administrative hearing before Millan's counsel withdrew was not meaningful. Accordingly, the Court is of the view that an adversarial post-restraint "probable cause" hearing is appropriate at this time.

Before a hearing is scheduled, however, the Government shall be given an opportunity to establish by a fair preponderance of credible evidence that Millan has access to or possession of funds or assets, other than those restrained, sufficient to enable him to retain private counsel. *United States v. All Funds on Deposit in Any Account at Certain Financial Institutions Held in the*

*Names of Certain Individuals,* 767 F.Supp. 36, 42 (E.D.N.Y.1991). If the Government presents evidence that Millan has access to sufficient unattached funds, no *Monsanto* hearing will be necessary. *Id.* If, however, the Government fails to present such evidence, the Court will conduct a *Monsanto* hearing to determine whether there is probable cause that (1) Millan committed crimes that provide a basis for forfeiture; and (2) the assets specified in the indictment are properly forfeitable. At the hearing the Court will consider evidence that might otherwise be inadmissible under the Federal Rules of Evidence. *Id.*

## CONCLUSION

For the reasons set forth above, the Court finds that (1) Banco Popular account number 277729, containing a balance of $65,178.48; (2) MHTC bank account number 0140721730–65, containing a balance of $43,332.61; and (3) $100,000 certified check drawn on the seized MHTC account, are still restrained pursuant to an ex parte, post-indictment, pretrial restraining order entered pursuant to 21 U.S.C. § 853. Accordingly, the Court finds further that the Government shall have ten days from the date of this order to submit credible evidence that Millan has access to or possession of unrestrained funds sufficient to retain private counsel. Failure to present such evidence will result in the scheduling of a hearing, pursuant to the Second Circuit's decision in *United States v. Monsanto,* 924 F.2d 1186 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991), where the Court will determine whether there is probable cause that Millan committed crimes that provide a basis for forfeiture and that the properties specified as forfeitable in the indictment are properly forfeitable.

SO ORDERED.