UNITED STATES of America

v.

Eric MILLAN–COLON, et al., Defendants.

No. S9 91 Cr. 685 (SWK).

United States District Court, S.D. New York.

Nov. 15, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City by Dietrich L. Snell, Roland G. Riopelle, Asst. U.S. Attys., for U.S.

Gino Josh Singer, New York City, for defendant Eric Millan–Colon.

Benjamin Brafman, New York City, for defendant Vincent Basciano.

Maurice H. Sercarz, New York City, for defendant Alfred Bottone.

David Breitbart, New York City, for defendant Alfred Bottone, Jr.

Frank A. Lopez, New York City, for defendant Anthony Bottone.

John Burke, Brooklyn, NY, for defendant John O'Rourke.

Thomas White, New York City, for defendant Ralph Rivera.

Sanford M. Katz, New York City, for defendant Larry Weinstein.

David Greenfield, New York City, for defendant Myles Coker.

Roger J. Schwarz, New York City, for defendant Jose Colon.

Valerie Amsterdam, New York City, for defendant Carmen Mendoza.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Pursuant to the Court's September 22, 1993 Order, the Government moves to modify the Court's March 29, 1993 Order (the "March 29th Order") permitting the defendants limited cross-examination of Government witnesses concerning the misconduct of Investigator Robert Robles ("Robles"), Detective Jeffrey Beck ("Beck") and Sergeant Joseph Termini ("Termini"). The Government submits that the Court should now preclude any reference to Robles, Beck, Termini, or any other individual implicated in the Government's investigation of corruption by New York Drug Enforcement Task Force members (the "Task Force"), during the cross-examination of Government witnesses, as well as during the defendants' opening statements.

In addition, the Government submits that the Court should reaffirm its prior rulings concerning: (1) the inadmissibility of evidence concerning the allegation of rape made against Anthony Damiani, a Government witness; (2) the admissibility of the audiotapes of the wiretapped telephone conversations through the testimony of summary witnesses; (3) the admissibility of drug records seized from Edward Margiotta at the time of his arrest on January 8, 1986 and the admissibility of drug records seized from the residence of Myles Coker on August 1, 1991; (4) the admissibility of the pen register information printed at the top of the telephone conversation transcripts once the pen register tapes have been admitted and testimony is given describing how the information on the transcripts is taken from the pen register tapes; (5) the inadmissibility of evidence concerning various unrelated *Bivens* actions commenced against certain Task Force members; (6) the denial of a limiting instruction with regard to evidence seized from Myles Coker's residence; and (7) the Government's ability to recall law enforcement witnesses, including co-case agent David Dongilli, as necessary during the case. The Government also moves for reconsideration of the Court's October 8, 1993 Memorandum Opinion and Order (the "October 8th decision") directing the Government to provide evidence that defendant Eric Millan ("Millan") has sufficient funds, other than those restrained under the federal forfeiture statute, to retain private counsel.

Defendants Alfred Bottone, Sr., Alfred Bottone, Jr., Anthony Bottone, Jose Colon,

Vincent Basciano, Myles Coker, Ralph Rivera, and John O'Rourke oppose that portion of the Government's motion that seeks an order (1) precluding cross-examination of witnesses concerning Robles, Termini and Beck, and the corruption investigation; and (2) admitting documents seized from Edward Margiotta and the home of Myles Coker. The defendants also seek re-affirmation of the Court's ruling precluding the introduction of testimony regarding a "dog sniff" test performed on evidence seized from the Bottone residence.[1] Millan also opposes the Government's request for reconsideration of the Court's October 8th decision.

## DISCUSSION

### I. Precluding Cross–Examination and References in the Defendants' Opening Statements regarding Robles, Beck, Termini and the Corruption Investigation

By Order dated March 29, 1993, 817 F.Supp. 1072, the Court ruled that the defendants should be permitted to cross-examine the Government's witnesses regarding corruption allegations against Robles, Beck and Termini, but limited cross-examination to the time period of the Blue Thunder investigation and to the witnesses' personal knowledge regarding the arrests of Robles, Beck and Termini. 817 F.Supp. at 1083–84. The Court emphasized that this limited cross-examination would enable the defendants to rebut any implied endorsement of Robles's credibility in the Government's opening statement. *Id.* at 1083. Due to the prejudicial effect of the Government's opening, the Court found that the probative value of such cross-examination outweighed the danger of

unfair prejudice to the Government, under Fed.R.Evid. 403. *Id.* at 1083.

At this time, the Government indicates that it does not intend to repeat its opening of March 9, 1993 at the upcoming trial and does not intend to make any mention of Robles, Beck, Termini or the corruption investigation. In addition, the Government intends to move to dismiss Counts Two, Three, Four and Five of the Indictment, as those counts involve Robles's undercover purchases of heroin from the Blue Thunder organization. Moreover, the Government does not intend to elicit testimony from any of its witnesses concerning those undercover purchases, and does not intend to offer at trial any evidence seized during a search or arrest performed by Robles, Beck, or Termini. Nor does the Government intend to call either Robles, Beck, or Termini as witnesses. *See* Letter from A.U.S.A. Dietrich L. Snell to the Honorable Shirley Wohl Kram of 10/15/93, at 2.

Accordingly, the Government moves, pursuant to Fed.R.Evid. 611(b) and 403, to preclude cross-examination of any of the Government's witnesses concerning the malfeasance of Robles, Beck and Termini, and to preclude the parties from referring to any aspect of the corruption investigation in their openings, on the grounds that: (1) such testimony would only confuse and mislead the jury because it would not tend to prove that the evidence offered by the Government is incomplete or improperly seized, and because it would not tend to undermine the credibility of any witness; (2) such cross-examination would be beyond the scope of any direct examination of the Government's witnesses; and (3) any offer of evidence of corruption would be solely for the improper purpose of

---

1. The defendants do not oppose the Government's other motions seeking reaffirmation of the Court's prior rulings that (1) evidence concerning the allegation of rape made against Anthony Damiani is inadmissible; (2) audiotapes of the wiretapped telephone conversations are admissible through the testimony of summary witnesses; (3) the pen register information printed at the top of the telephone conversation transcripts are admissible once the pen register tapes have been admitted and testimony is given describing how the information on the transcripts is taken from the pen register tapes; (4) evidence concerning various unrelated *Bivens* actions commenced against certain Task Force members is inadmissible; (5) a limiting instruction with regard to the evidence seized from Myles Coker's residence is denied; and (6) the Government may recall law enforcement witnesses, including agent David Dongilli. As the Court sees no reason to disturb its prior rulings, the Government's request is granted. Similarly, as the Government does not oppose the defendants' request that the Court reaffirm its prior ruling regarding the inadmissibility of testimony regarding a "dog sniff" test performed upon evidence seized from the Bottone residence, this request is also granted.

inciting the jury's anger at the misconduct of law enforcement personnel in connection with matters collateral to the issues the jury must decide in this case. The Government also requests that the Court order all parties to refrain from referring to any aspect of the corruption investigation during opening statements on the grounds that: (1) the officers' corruption is entirely collateral and irrelevant to the issues that will be decided by the jury in this case; and (2) such evidence is inadmissible at trial.

The defendants oppose the Government's motion on the grounds that (1) the corruption at issue was widespread, and "calls into question the entire system of preserving and vouchering the evidence seized on August 1, 1990 [sic]," *see* Letter from Maurice Sercarz to the Honorable Shirley Wohl Kram of 10/22/93 (the "Sercarz Letter"), at 2; (2) members of the Task Force, who were implicated by Robles and Termini in various crimes, participated in monitoring the wiretaps in this case, and thus, must be cross-examined concerning the possibility that improper monitoring may have occurred, *id.* at 3; (3) as the testimony of the Government's witnesses, specifically the case agents, may be based to some extent on hearsay provided by Beck, Robles, or Termini, the defendants have the right to attack the credibility of Robles, Termini and Beck, *id.* at 4; and (4) that the defendants may want to call Robles, Beck or Termini as witnesses in their case.

### A. Standard of Law

■ The purpose of cross-examination is to impeach credibility and expose a witness's biases or possible motives for testifying. *United States v. McLaughlin*, 957 F.2d 12, 17 (1st Cir.1992). Although it is well established that the Court may, in its discretion, limit the scope and extent of cross-examination, *see United States v. Concepcion*, 983 F.2d 369, 391 (2d Cir.1992), *cert. denied,* — U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993), it is also recognized that "[w]ide latitude should be allowed, ... when a government witness in a criminal case is being cross-examined by the defendant, ... and the trial judge's discretion 'cannot be expanded to justify a curtailment which keeps from

the jury relevant and important facts bearing on the trustworthiness of crucial testimony....' " *United States v. Reindeau*, 947 F.2d 32, 35 (2d Cir.1991) (quoting *United States v. Pedroza*, 750 F.2d 187, 195–96 (2d Cir.1984)). However, "[c]ross examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Caming*, 968 F.2d 232, 237 (2d Cir.1992) (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 806 (2d Cir.1990), *cert. denied*, 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)), *cert. denied,* — U.S. ——, 113 S.Ct. 416, 121 L.Ed.2d 339 (1992). Moreover, under Rule 403, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. Thus, the trial judge has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, ... prejudice, confusion of the issues ... or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

### B. Cross–Examination to Show Improper Vouchering of the Evidence

■ Relying on allegations implicating three officers in the theft of a substantial amount of money from defendant Carlos Rivera's car at the time of his arrest, the defendants contend that "evidence exists which calls into question the entire system of preserving and vouchering the evidence seized on August 1, 1990 [sic]." Sercarz Letter at 2. Thus, the defendants maintain that, should the Government infer that the physical evidence in this case was appropriately vouchered and preserved, the defendants should be allowed to prove otherwise. The defendants further contend that, as reports by Government agents regarding the seizure of items of physical evidence are false or inaccurate, the defendants should be permitted to introduce evidence, either through cross-examination or direct testimony, that: (1) some agents involved in the Blue Thunder

investigation stole money; (2) the vouchers do not reflect the sum total of the property seized; and (3) the supervising agents failed to insure that the chain of custody was preserved. *Id.*

In response, the Government indicates that none of the evidence that it will offer at trial was seized by the officers implicated in the corruption investigation, and that those officers will not be in the chain of custody. *See* Letter from A.U.S.A. Dietrich L. Snell to the Honorable Shirley Wohl Kram of 10/29/93, at 3, 4.

The Court finds that cross-examination of the Government's witnesses regarding the Task Force corruption investigation to show improper vouchering of the evidence, false and inaccurate reports, and problems with the chain of custody would pose a serious Rule 403 problem as such cross-examination is clearly more prejudicial than probative. First, as the Government does not intend to offer any evidence seized by the corrupt officers and as the officers will not be in the chain of custody, the defendants' proposed cross-examination regarding the corruption investigation would clearly be beyond the scope of any direct examination. *See United States v. McLaughlin,* 957 F.2d at 18 (party has no right to cross-examine witnesses beyond the scope of their direct examination or into matters not bearing on their credibility).

Second, as the Government does not intend to call Robles, Beck and Termini as witnesses, any testimony regarding their corrupt acts has no bearing on the credibility of the Government's other witnesses and is completely collateral to the issue of the other witnesses' veracity. *Id.* at 17 (main purpose served by cross-examination is to impeach credibility and expose possible bias or motive).

Third, as the Government indicates that it will not offer evidence seized by any officer implicated in the corruption investigation and that those officers will not be in the chain of custody, any testimony regarding their misdeeds would be substantially more prejudicial than probative. *See United States v. Weiss,* 930 F.2d 185, 198 (2d Cir.1991) ("if the probative value of evidence is outweighed by the unfair prejudice that might result from

its introduction, it should not be admitted."), *cert. denied,* —— U.S. ——, 112 S.Ct. 133, 116 L.Ed.2d 100 (1991). This evidence would have minimal probative value as it would merely show that certain law enforcement officers, other than those testifying, who were marginally involved in the seizure of Blue Thunder evidence, allegedly stole money during certain searches and seizures. Many of these allegations remain unsubstantiated. *See United States v. Concepcion,* 983 F.2d at 392 (court properly precluded cross-examination by defendant of government informant about murder allegedly committed by informant where there was insufficient evidence that such a murder had occurred or was committed by the informant and defendant's proffer consisted largely of hearsay statements by unidentified sources). Moreover, no party alleges nor does any report regarding the corruption investigation indicate that evidence was fabricated against the defendants. Rather, the allegations regarding thefts of the defendants' monies suggest that the Government now has less evidence than it might have had initially. Thus, the results of the Task Force corruption investigation have little bearing on the process used to voucher the evidence which the Government intends to introduce at trial.

On the other hand, however, the introduction of evidence of the corruption investigation by cross-examination of the Government's witnesses would be prejudicial, cause jury confusion and delay this trial. In fact, after declaring a mistrial on April 16, 1993, the Court noted that "the testimony the jury was hearing regarding 'dirty drug-dealing cops,' though largely irrelevant to the facts of this case, was likely to confuse the issues, sidetrack the trial and impede the jury from deciding the guilt or lack of guilt of the defendants based on the evidence in the case." *See* Memorandum Opinion and Order, dated July 30, 1993, 829 F.Supp. 620, 630; *see also* Trial Transcript ("Tr.") at 1879 (wherein defense counsel argued that the jury would be subjected to an "exercise where for three months we're going to be trying police corruption and for three months we're going to be trying narcotics allegations."). Accordingly, the Court finds that

cross-examination regarding the corruption investigation for the purpose of attacking the Government's system for preserving and vouchering the evidence in this case is inappropriate.[2]

### C. Cross–Examination to Show Improper Minimization of the Wiretaps

■ The defendants also contend that any suggestion by the Government that the agents properly minimized the Title III wiretap interceptions would open the door to cross-examination that the wiretaps were not properly minimized as the monitoring agents sought to obtain information to plan thefts of money, jewelry and drugs. However, in its March 29th Order, the Court concluded, after conducting an extensive review of the wiretap logs, that the wiretap interceptions in this case were properly minimized. *See* 817 F.Supp. at 1079. In addition, with respect to Beck and Termini, the Government has indicated that they did not act as monitors of the wiretaps. Thus, as no evidence has been discovered by either party calling the Court's March 29th ruling into question, the Court finds that cross-examination regarding the corruption investigation to prove improper minimization would be irrelevant and prejudicial.

### D. Reliance upon Hearsay and Reference to Robles, Beck or Termini in the Openings

■ The defendants also suggest that the testimony of the case agents for the Blue Thunder investigation may be based to some extent on hearsay provided by Robles, Termini or Beck, giving them the right to attack the credibility of Robles, Beck and Termini through hearsay elicited from the Government's witnesses. The Court finds that this contention ignores the fact that Robles played a very limited role in the Blue Thunder case—as an undercover agent and a wiretap monitor—regarding which the Government will elicit no testimony. As to Beck

and Termini, the Government indicates that they played virtually no role in the Blue Thunder investigation. Accordingly, the Court believes that it is extremely doubtful that any Blue Thunder case agent would base any trial testimony on facts learned from the corrupt agents and that cross-examination for this purpose is also inappropriate pursuant to Fed.R.Evid. 403. Nonetheless, the Government should refrain from eliciting any testimony based on the hearsay of Robles, Beck and Termini.

Moreover, the Court agrees with the Government's contention that all parties must refrain from referring to any aspect of the corruption investigation during opening statements. As discussed previously, the corruption of the officers is largely collateral and irrelevant to the issues that will be decided by the jury in this case. As the purpose of an opening statement is to describe those matters that a litigant intends to prove during trial, any reference to the corruption investigation during opening arguments would be improper. *See United States v. Hershenow*, 680 F.2d 847, 858 (1st Cir.1982) ("[t]he scope and extent of an opening is within the control of the trial court"); *United States v. Freeman*, 514 F.2d 1184, 1192 (10th Cir.1975) (trial court's decision to preclude defense counsel from referring to matters affecting government witness's credibility in opening upheld as opening statements should be confined to what the evidence will be).

### II. The Admissibility of Drug Records Seized from Edward Margiotta and Myles Coker

■ At the first trial, the Government offered as evidence records seized from Edward Margiotta at the time of his arrest on January 8, 1986, and records seized from Myles Coker's apartment at the time of his arrest on August 1, 1991. At the time the Government offered these records, the defendants, relying on the Ninth Circuit case of *United States v. Ordonez*, 737 F.2d 792 (9th

---

2. As an aside, the Court assumes that the Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104

(1972), and will provide the defendants with all relevant material, including those investigative reports reflecting allegations that Special Agent David Dongilli tampered with certain DEA–6 reports.

Cir.1984), objected to admitting the evidence as drug records on the ground that they were hearsay for which no foundation for a hearsay exception had been established. Tr. at 1627–40. After both parties were heard, the Court declined to follow the Ninth Circuit case cited by defendants, based on Second Circuit authority, including *United States v. Maldonado–Rivera*, 922 F.2d 934 (2d 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991). Defendants now oppose the Government's request that the Court's trial ruling be reaffirmed on the ground that the Government has not established an adequate foundation for admitting the records into evidence. The Court disagrees and finds that the documents are admissible as nonhearsay pursuant to Fed.R.Evid. 801(d)(2)(E).

In order to admit a document under Rule 801(d)(2)(E)[3], the Court must determine by a preponderance of the evidence that (1) there was a conspiracy; (2) that the conspiracy's members included the declarant and the parties against whom the statement is offered; and (3) that the statement was made during the course of and in furtherance of the conspiracy. *United States v. Maldonado–Rivera,* 922 F.2d at 958.

### A. Authentication as a Coconspirator Document

As a general rule, a document may not be admitted into evidence unless it is genuine. *United States v. Maldonado–Rivera,* 922 F.2d at 957. This requirement of "authentication" is satisfied if the evidence supports a finding that "the matter is what its proponent claims." *United States v. Bagaric,* 706 F.2d 42, 67 (2d Cir.1983) (quoting Fed.R.Evid. 901(b)(4)), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). In determining whether a document may be attributed to a coconspirator, the Court may consider such factors as the document's "appearance, contents, substance, timing, and provenance, together with other evidence...." *United States v. Maldonado–Rivera,* 922 F.2d at 957; *see also* Fed.R.Evid. 901(b)(4). Thus, for example, in

*United States v. Calbas,* 821 F.2d 887 (2d Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988), the Second Circuit held that pages from a spiral notebook, found in a coconspirator's hotel room, were admissible as drug records even though there was no testimony that the notebook was a drug record, there was no proof that the codefendant could speak the language in which the notebook was written, and there was no proof that the codefendant was the author of the notebook. Although Calbas contested the admission of the spiral notebook on the ground that there was insufficient evidence to link the notebook to the charged narcotics conspiracy, as well as insufficient evidence to establish the notebook's ownership, *id.* at 893, the Second Circuit disagreed, finding that: (1) the notebook was found in a room recently vacated by Calbas's codefendant, together with a kilogram of cocaine; and (2) the notebook contained references to the defendant—"Enver Turku"—which also appeared in a codefendant's personal telephone directory. *Id.*

In the case at hand, the Court finds that, although the identity of the author of the documents at issue is unknown, the evidence suggests that the documents were authored by one or more of the alleged coconspirators. First, the documents were seized from Coker's residence. In addition, the notes contain the names, and in one case a photograph, as well as phone and beeper numbers of Coker's alleged coconspirators. Third, the documents contain references to "EJ," who the Government claims is Eric Millan, the lead defendant. In addition, the notes were found in close proximity to cash, drugs and guns, and therefore, as the Government contends, more likely than not written by someone involved in the Blue Thunder conspiracy. *See United States v. Reyes,* 798 F.2d 380, 383 (10th Cir.1986) (where contents of notes seized from defendant's residence included names and initials of co-conspirators, notations of numbers of ounces, subtractions and additions of six-digit figures and phone numbers, there was ample basis to admit them as authentic drug records); *United States v.*

3. Fed.R.Evid. 801(d)(2)(E) provides that a statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

*Helmel,* 769 F.2d 1306, 1312 (8th Cir.1985) (where the declarant's identity is unknown, documents may still be admitted as nonhearsay where the documents were discovered at the home of one of the conspirators, along with other evidence relating to a gambling organization, and fingerprints of two codefendants were found on them). Accordingly, the Court finds that the documents' contents and the circumstances surrounding their seizure provide sufficient basis to conclude that the records are authentic statements of coconspirators.

### B. In Furtherance of the Conspiracy

■ To be in furtherance of the conspiracy, a statement must be "more than [a] 'mere[ ] narrative' description by one coconspirator of the acts of another." *United States v. Maldonado–Rivera,* 922 F.2d at 958 (quoting *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1199 (2d Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989)). Rather, the statements must be such "as to prompt the listener—who need not be a coconspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Maldonado–Rivera,* 922 F.2d at 958. With regard to drug records, the Second Circuit has held that, assuming the government establishes by a preponderance of the evidence that there was a conspiracy in which the defendants participated, the government is entitled, without more, to introduce evidence of what any coconspirator did in furtherance of the conspiracy, including records of narcotics transactions. *United States v. Calbas,* 821 F.2d at 893. Thus, assuming the Government provides proof, apart from these drug records, to connect the conspirators to the alleged conspiracy, these records will be admissible. *Id.*

For the moment, however, the Court holds that, until such time as the documents are offered by the Government to prove the truth of the facts asserted therein, the records in question are admissible for the limited purpose of showing "the character and use of the place" where the objects were found. *United States v. Wilson,* 532 F.2d 641, 645 (8th Cir.1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Thereafter, should the Government seek to introduce the documents for the truth of the matters asserted therein, the documents will also be admissible as coconspirator statements, assuming the Government provides evidence connecting the coconspirators to the conspiracy.

Finally, the Second Circuit has found previously that, where Rule 801(d)(2)(E)'s preconditions are met, "the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of [the] statements." *United States v. Maldonado–Rivera,* 922 F.2d at 959 (quoting *Bourjaily v. United States,* 483 U.S. 171, 183–84, 107 S.Ct. 2775, 2782–83, 97 L.Ed.2d 144 (1987)). Thus, the defendants' arguments that admission of the documents deprives them of their Sixth Amendment rights of confrontation are denied.

### III. Myles Coker's Pre–Trial Motion to Suppress

■ Myles Coker ("Coker") moves to relitigate his motion to suppress physical evidence and post-arrest statements on the grounds that (1) a civil complaint, filed on July 10, 1992, against Special Agent Richard Demurgian ("Demurgian") constitutes *Brady* and *Giglio* material, *see Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), which the Government failed to disclose; and (2) the July 10th suit and an October 21, 1992 civil suit, which accuse Demurgian and others of conducting warrantless searches and fabricating consents to search, reveal a "pattern of perjury and 'tailored' testimony" that would have changed the outcome of the suppression hearing. *See* Letter from David S. Greenfield to the Honorable Shirley Wohl Kram of 10/14/93, at 1. The Court disagrees.

By Orders dated September 4, and October 9, 1992, the Court previously denied Coker's motion to suppress physical evidence obtained pursuant to a warrantless search of his residence and post-arrest statements on the grounds that "defendant's statements were knowingly and voluntarily made after he received his *Miranda* warnings, and that

the defendant voluntarily gave his consent to have his apartment searched." October 9, 1992 Order at 3; *see also* September 4, 1992 Order at 82–91. The Court finds no grounds for questioning the wisdom of its prior decisions, as Coker has not shown how prior disclosure of the civil suits would have enabled him to change the outcome of the suppression hearing. Accordingly, Coker's motion to relitigate his motion to suppress physical evidence and post-arrest statements is denied.

## IV. Ralph Rivera's Pre–Trial Motions

Ralph Rivera ("Rivera") moves for an order: (1) pursuant to Fed.R.Cr.P. 12(b)(3), suppressing wire communications intercepted pursuant to court order; (2) pursuant to Fed.R.Cr.P. 12(b)(3) and 41(c)(1), suppressing all material seized from the defendant at the time of his arrest and all material obtained through the execution of search warrants at 171 Station Avenue, Staten Island, New York and 1668–1672 Utica Avenue, Brooklyn, New York; (3) pursuant to Fed. R.Cr.P. 7(f), directing the Government to file a Bill of Particulars with respect to Count 17 of the Indictment; and (4) pursuant to Fed. R.Cr.P. 16, requiring the Government to disclose certain evidence. The Government opposes these motions. The Court will address each motion in turn.

### A. Motion to Suppress the Wiretap

■ Rivera moves to suppress wiretap evidence on the ground that there was no probable cause to support the issuance of wiretap warrants. By Orders dated September 4, 1992 and March 29, 1993, the Court previously denied a similar motion to suppress. As Rivera has pointed to no new facts supporting his present motion to suppress, the Court will not revisit its prior rulings.

### B. Motion to Suppress the Evidence Seized from Rivera

Rivera also requests that the Court suppress evidence seized from him at the time of his arrest, as well as evidence seized from his home and business, on the grounds that: (1) the arrest and search warrants were issued without probable cause; (2) the search warrants were overbroad and open-ended; and (3) the warrants were not executed in "good faith" as "evidence was planted in his residence and on his person by government agents who conducted the searches." *See* Affidavit of Ralph Rivera, sworn to on October 17, 1993, at ¶¶ 4–7.

### 1. Probable Cause

■ With respect to the probable cause issue, the Second Circuit has held that the "magistrate's finding of probable cause is entitled to substantial deference ... [and] will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir.1983) (citations omitted); *United States v. Zucco*, 694 F.2d 44, 46 (2d Cir.1982) (all doubts in a close case should be resolved in favor of upholding the validity of the warrant). Thus, the Court will uphold the magistrate judge's determination of probable cause to arrest if, based on "reasonably trustworthy information," the magistrate judge had reasonable cause to believe that (1) a violation of the law has been committed; and (2) the person to be arrested committed the violation. *See Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *United States v. Serna*, 625 F.Supp. 548, 560 (S.D.N.Y.1985); *United States v. LaTray*, 739 F.Supp. 88, 92 (N.D.N.Y.1990). Similarly, the Court will uphold the magistrate judge's determination of probable cause to search, if the magistrate judge concludes, based on the "totality of the circumstances," that (1) a crime was committed; and (2) there is probable cause to believe that evidence of such crime will be found in the place to be searched. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Serna*, 625 F.Supp. at 562.

With respect to the items seized at the time of Rivera's arrest and from his home and business, the Court finds that there was probable cause to support the issuance of both the arrest and search warrants. Rivera's arrest and the subsequent search of 171 Station Avenue and 1668–1672 Utica Avenue were premised upon a complaint and affidavits filed in this district and sworn to by

Special Agent David Dongilli before a magistrate judge. Both the complaint and affidavits set forth facts in support of the allegation that Rivera was involved in a heroin distribution conspiracy, describe Rivera's participation in the conspiracy, and provide citations to certain conversations intercepted by wiretap. For example, the Affidavit of David Dongilli, sworn to on July 31, 1991 (the "July 31st Dongilli Aff."), indicates that telephone conversations intercepted on March 6, March 11, March 15, and June 18, 1991, reveal that Rivera kept track of the Blue Thunder's cash supply and its balance sheet with respect to its heroin suppliers. *See* July 31st Dongilli Aff. at ¶¶ 25–29. Rivera's ownership and use of the properties at issue is also described, including evidence that Rivera invested proceeds of his narcotics transactions in his automobile repair shop and was using the business to launder money. *Id.* at ¶¶ 23, 31–34. In addition, the Dongilli Affidavit states that, based on Special Agent Dongilli's experience, narcotics traffickers such as Rivera typically store in their homes and businesses large sums of cash, records, photographs and other items of the types seized from Rivera's home and business. *Id.* at ¶¶ 46, 48, 49. Rivera does not allege that any statement in the two affidavits or the complaint are false. *See United States v. Castillo*, 866 F.2d 1071, 1078 (9th Cir.1988) (warrant may be invalidated by showing knowing false statements). Thus, the Court finds that the complaint and affidavits set forth the requisite probable cause for both the arrest and the search.

### 2. Particularity

Rivera also urges that the search warrants lacked sufficient particularity. The particularity requirement of the Fourth Amendment is satisfied where the description of materials to be seized "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir.1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (citations omitted). Thus, the Supreme Court has upheld warrants authorizing the seizure of voluminous documents and "other fruits, instrumentalities and evidence of crime at this [time] unknown." *Andresen v. Maryland,*

427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *see also United States v. Young,* 745 F.2d 733, 759 (2d Cir.1984) (authorizing the search for "[q]uantities of heroin and other controlled substances, other chemical substances, equipment, utensils, paraphernalia, containers, money, notes, documents and papers and other evidence of a conspiracy"), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Dunloy,* 584 F.2d 6, 8 (2d Cir.1978) (upholding a warrant for a search for "a quantity of cocaine, and additionally, all narcotic drug controlled substances, documents, records and other evidence of distribution and possession with intent to distribute narcotic controlled substances.").

Here, the search warrants in question authorized a search for:

> Documents relating to narcotics trafficking activity, including records of narcotics transactions, telephone and address books; telephone records, papers evidencing beeper numbers, financial records, ledgers, monies, money orders, money order receipts, bank books, bank deposit records, records evidencing ownership in property and jewelry and other records evidencing the expenditure, transfer or concealment of money; paging devices, beepers and cellular telephones; photographs; keys to safety deposit boxes or other locked containers; firearms, firearm accessories and ammunition; identification documents, evidencing occupancy, residency or ownership of the premises to be searched; and other property, documents and things which constitute evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruit of the violation of the federal narcotics laws, including, but not limited to, conspiracy to distribute and the possession with intent to distribute heroin, in violation of Title 21, United States Code, Sections 841 and 846.

*see* Search Warrant for 171 Station Avenue, Staten Island, New York, annexed to the Rivera Aff. as Exh. "A," and a search for:

> Automobiles, snowmobiles and other vehicles belonging in fact to members of the

"Blue Thunder" organization; documents relating to money laundering activity, including records of financial transactions, telephone and address books, telephone records, papers evidencing beeper numbers, financial records, ledgers, monies, money orders, money order receipts, bank books, bank deposit records, records evidencing ownership in property and jewelry and other records evidencing the expenditure, transfer or concealment of money; paging devices, beepers and cellular telephones; photographs; keys to safety deposit boxes or other locked containers; firearms, firearm accessories and ammunition; identification documents, evidencing occupancy, residency or ownership of the premises to be searched; and other property, documents and things which constitute evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruit of the violation of the federal money laundering statutes and the federal narcotics laws, including, but not limited to, conspiracy to distribute, and the possession with intent to distribute heroin, in violation of Title 21, United States Code, Sections 841 and 846.

*see* Search Warrant for 1668–1672 Utica Avenue, annexed to the Rivera Aff. as Exh. "C." The Court finds that the warrants were sufficiently particularized as: (1) the warrants supplied sufficient examples and an illustrative list of the types of records and items that could be seized, *see United States v. Riley*, 906 F.2d 841, 845 (2d Cir.1990); and (2) it is appropriate to seize all records of a business where the criminal activity allegedly permeates the entire business, *see United States v. Giorgi*, S86 Cr. 385, 1987 WL 16589, at *8 (S.D.N.Y. Sept. 1, 1987). *See also United States v. Buck*, 813 F.2d 588, 590 (2d Cir.1987) (noting that courts "tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant.") (quoting *United States v. Young*, 745 F.2d at 759), *cert. denied*, 484 U.S. 857, 108

S.Ct. 167, 98 L.Ed.2d 121 (1987). Accordingly, the Court denies Rivera's request to suppress the seized evidence on the basis that the search warrants lacked sufficient particularity.

### 3. Good Faith Exception

 Rivera also contends that the evidence should be suppressed because the search warrants were not executed in "good faith." Where a search warrant was not supported by probable cause, the evidence would still be admissible if the officers who conducted the search acted in good faith reliance upon the warrant. *United States v. Leon*, 468 U.S. 897, 919–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984); *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992); *United States v. Buck*, 813 F.2d 588, 592 (2d Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985). Thus, suppression should not apply where the evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. at 922, 104 S.Ct. at 3420.

 The good faith exception does not apply in four situations, however: (1) where the issuing magistrate judge has been knowingly misled; (2) where the issuing magistrate judge abandoned his or her judicial role; (3) where the warrant application is "so lacking in indicia of probable cause as to render reliance upon it unreasonable;" and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. As Rivera does not allege any false or misleading statement in the affidavits of Special Agent Dongilli or the complaint, and nothing in the record suggests that the magistrate judge was misled or abandoned his or her judicial responsibilities, the Court finds that the agents who executed the search warrants could rely on them in good faith. *Id.; see also Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *United States v. Moore*, 968 F.2d at 222–23. Accordingly, Rivera's motion to sup-

press the fruits of the search incident to his arrest and the search of 171 Station Avenue and 1668–1672 Utica Avenue, on the grounds that the arrest and search warrants were not executed in good faith is denied.

### C. Request for a Bill of Particulars and Additional Discovery

█ Finally, Rivera asks that the Court direct the Government to file a Bill of Particulars with respect to Count 17 of the Indictment, and also makes a voluminous request for additional discovery from the Government. The Court finds that both requests are unwarranted. First, the Court previously denied similar requests for discovery and a bill of particulars on the grounds that the motions were without merit. *See* September 4, 1992 Order at 93. Second, the Government indicated that it has already disclosed much of the requested material, including: (1) the defendant's written, oral, or recorded statements (Request Nos. 15(a), 15(b), 15(c)); (2) the defendant's prior criminal record (Request No. 16(a)); (3) all physical evidence taken from the defendant and the relevant warrants (Requests No. 17(a), 17(b)); and (4) the results or reports of any laboratory or scientific tests and experiments (Request No. 18). *See* Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions, dated June 5, 1992, at 88–102. Accordingly, as the Government has satisfied its obligations under Fed.R.Cr.P. 16 and provided Rivera with the requisite discovery months ago, and as Rivera has not shown that he is entitled to any additional discovery, the Court denies his request for further discovery and a bill of particulars.

### V. Motion for Reconsideration

The Government also moves for reconsideration of the Court's October 8th decision directing the Government to submit credible evidence indicating that Millan has access to or possession of funds not restrained by the federal forfeiture statute sufficient to retain private counsel. *See* October 8th decision at 30. The Government now contends that the Court's decision was based, in part, on "certain inaccuracies contained in the Government's September 14, 1993 submission to the Court...." *See* Letter from A.U.S.A. Dietrich L. Snell to the Honorable Shirley Wohl Kram of 10/21/93 (the "Snell Letter"), at n. 1. Specifically, the Government indicates that (1) neither the funds contained in the Manufacturers Hanover Trust Company ("MHTC") account, the Banco Popular account, or the $100,000 certified check were ever subject to restraint under 21 U.S.C. § 853; (2) neither account fell within the purview of the criminal restraining orders, but rather, was included in the application for the restraining orders to "ensure the preservation of any *additional* accounts at those banks that the Government had not yet identified and seized," Snell Letter at 3 (emphasis in original); and (3) the $100,000 certified check was *drawn on* and not *deposited to* the MHTC account and was not the certified check discussed in the Affidavits of Sharon Cohen Levin, sworn to on August 2 and August 16, 1991. In light of the Government's recent disclosures and clarification of the record, the Court finds as follows.

### A. The $100,000 Certified Check

█ In its October 8th decision, 836 F.Supp. 994, the Court noted that the Government had presented two "contradictory" versions of the circumstances surrounding the forfeiture of the $100,000 certified check. *See* 836 F.Supp. at 996 n. 2. Although the Government originally indicated that a certified check was *drawn on* the seized MHTC account, it later claimed that the $100,000 certified check was *deposited in* Millan's MHTC account. *Id.* After receiving the Court's October 8th decision and further researching the history of the $100,000 certified check, the Government conclusively established that the check was *drawn on* the MHTC account and made payable to a "Steve Gelmis." As a result, once the $100,000 check was certified by the bank, under New York law it became the property of the payee, Steve Gelmis. *See* N.Y.U.C.C. §§ 3–411, 4–303 (McKinney 1991); *Feingold v. Ornoff,* 57 N.Y.S.2d 68 (1945). Accordingly, as the Government indicates, Millan cannot claim a valid ownership interest in the $100,000 certified check and thus, lacks standing to challenge its forfeiture.

## B. The MHTC and Banco Popular Accounts

■ The Government also submits that Millan is not entitled to a *Monsanto* hearing regarding release of the funds contained in the MHTC and Banco Popular accounts because those assets were never subject to restraint pursuant to 21 U.S.C. § 853. Rather, the Government indicates that both accounts were seized by the Government on August 1, 1991, pursuant to *civil* seizure warrants issued on July 30, 1991. Thus, even though both the MHTC and Banco Popular accounts were named in the Government's application for a criminal restraining order, *see* 836 F.Supp. at 996–97, the assets were never criminally restrained. Instead, "the Government included them in the application *not* to restrain the two already seized accounts, but rather to ensure the preservation of any *additional* accounts at those banks that the Government had not yet identified and seized." Snell Letter at 3 (emphasis in original).

Although the Court is still troubled by what appears to be the Government's concurrent reliance upon 21 U.S.C. §§ 853 and 881 and believes that indiscriminate use of both civil and criminal seizure should be discouraged, if only to avoid problems such as those that have arisen in the case at hand, the Court finds that the Government has now presented credible evidence indicating that the funds in question were not criminally restrained. *See* Declaration of A.U.S.A. Sharon Cohen Levin, dated October 21, 1993, at ¶¶ 5, 9, 13, 14 (noting that the accounts were not criminally restrained); Declaration of Maureen Stein, dated October 21, 1993, at ¶¶ 5, 7, 8 (affirming that the funds had already been civilly seized prior to receipt of the criminal restraining order). Therefore, in light of the present record, the Court finds that the Second Circuit's concerns, set forth in *United States v. Monsanto*, 924 F.2d 1186 (2d Cir.), *cert. denied*, ─ U.S. ─, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991), are not implicated here as the assets in question were never criminally restrained, and instead, were administratively forfeited prior to Millan's present motion. *See United States (Drug Enforcement Agency) v. One 1987 Jeep Wrangler Auto. VIN No. 2BCCL8132HBS12835*, 972 F.2d 472, 480 (2d Cir.1992) (federal court lacks jurisdiction to review the merits of an administrative forfeiture). Thus, the Government's motion for reconsideration is granted, and Millan's request for a *Monsanto* hearing is denied.

## CONCLUSION

In light of the Government's representation that it (1) does not intend to repeat its opening of March 9, 1993; (2) does not intend to make any mention of Robles, Beck, Termini or the corruption investigation; (3) will move to dismiss Counts Two, Three, Four and Five of the Indictment; (4) will not elicit any testimony from any of its witnesses concerning the undercover purchases involving Robles; (5) does not intend to offer at trial any evidence seized during a search or arrest performed by Robles, Beck or Termini or any evidence in which Robles, Beck or Termini were in the chain of custody; and (6) will not call either Robles, Beck or Termini as witnesses, the Court grants the Government's motion to modify the Court's March 29th Order. Consequently, all parties are precluded from referring to Robles, Beck, Termini, or any other individual implicated in the Task Force corruption investigation during the cross-examination of Government witnesses and during opening statements. In addition, the Government's request for an order re-affirming the Court's prior rulings concerning: (1) the inadmissibility of evidence concerning the allegation of rape made against Anthony Damiani, a Government witness; (2) the admissibility of the audiotapes of the wiretapped telephone conversations through the testimony of summary witnesses; (3) the admissibility of drug records seized from Edward Margiotta at the time of his arrest on January 8, 1986 and the admissibility of drug records seized from the residence of Myles Coker on August 1, 1991; (4) the admissibility of the pen register information printed at the top of the telephone conversation transcripts once the pen register tapes have been admitted and testimony is given describing how the information on the transcripts is taken from the pen register tapes; (5) the inadmissibility of evidence concerning various unrelated *Bivens* actions

commenced against certain Task Force members; (6) the denial of a limiting instruction with regard to evidence seized from Myles Coker's residence; and (7) the Government's ability to recall law enforcement witnesses, including co-case agent David Dongilli, as necessary during the case, is granted. Furthermore, the Government's motion for reconsideration of the Court's October 8th decision, directing the Government to provide evidence that Millan has sufficient funds, other than those restrained under the federal forfeiture statute, to retain private counsel, is granted, and Millan's request for a *Monsanto* hearing is denied. Finally, the defendants' request for an order re-affirming the Court's ruling precluding the introduction of testimony regarding a "dog sniff" test performed on evidence seized from the Bottone residence, is also granted.

In addition, the Court also denies defendant Coker's motion to suppress physical evidence and post-arrest statements, and defendant Rivera's motion to suppress wiretap evidence; motion to suppress evidence; and request for a bill of particulars and additional discovery.

SO ORDERED.