UNITED STATES of America

v.

Eric MILLAN–COLON,
et al., Defendants.

No. S9 91 Cr. 0685 (SWK).

United States District Court,
S.D. New York.

Nov. 22, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City by Dietrich L. Snell, Asst. U.S. Atty., Roland G. Riopelle, Asst. U.S. Atty., for U.S.

Gino Josh Singer, New York City, for defendant, Eric Millan–Colon.

Benjamin Brafman, New York City, for defendant, Vincent Basciano.

Maurice H. Sercarz, New York City, for defendant, Alfred Bottone.

David Breitbart, New York City, for defendant, Alfred Bottone, Jr.

Frank A. Lopez, New York City, for defendant, Anthony Bottone.

John Burke, Brooklyn, NY, for defendant, John O'Rourke.

Thomas White, New York City, for defendant, Ralph Rivera.

Sanford M. Katz, New York City, for defendant, Larry Weinstein.

David Greenfield, New York City, for defendant, Myles Coker.

Roger J. Schwarz, New York City, for defendant, Jose Colon.

## ORDER

KRAM, District Judge.

As the history of this protracted criminal case has been set forth by this Court at length in *United States v. Millan–Colon,* 829 F.Supp. 620 (S.D.N.Y.1993), *United States v. Millan,* 817 F.Supp. 1086 (S.D.N.Y.1993), and *United States v. Millan,* 817 F.Supp. 1072 (S.D.N.Y.1993), familiarity with the facts is presumed.

By Memorandum Opinion and Order dated November 15, 1993 (the "November 15th Opinion"), the Court granted, *inter alia,* the Government's request that all parties be precluded from referring to Investigator Robert Robles ("Robles"), Detective Jeffrey Beck ("Beck"), and Sergeant Joseph Termini ("Termini"), or any other individual implicated by the Government's investigation of corruption by New York Drug Enforcement Task Force members (the "corruption investigation"), during the cross-examination of Government witnesses, as well as during the defendants' opening statements. *See United States v. Millan–Colon,* 836 F.Supp. 1007 (S.D.N.Y.1993) Defendants Eric Millan, Vincent Basciano, Myles Coker ("Coker"), Ralph Rivera, Alfred V. Bottone, Sr. ("Bottone") and Jose Colon ("Colon") (collectively, the "defendants") now move the Court to reconsider its November 15th Opinion. Specifically, the defendants contend that they should be permitted to (1) cross-examine defendant Carlos Rivera ("Rivera") regarding money in Rivera's possession at the time of his arrest, which is now missing, and the fact that this missing money was not vouchered by the New York Drug Enforcement Task Force; and (2) pursue the defense that some or all of the allegations brought against Colon and others were fabricated by corrupt

officers. The Government opposes these motions and requests that the Court not only reaffirm its November 15th Opinion, but also issue a further order precluding defense counsel from cross-examining Special Agent David Dongilli ("Dongilli") regarding Beck's accusation that Dongilli rewrote a DEA–6 report drafted by Beck in June 1990.

## I. Cross–Examination of Carlos Rivera

■ In substance, defendants maintain that, if the Government calls Rivera as a witness, the defendants should be permitted to cross-examine him regarding *all* matters pertaining to his arrest, including, allegations that corrupt police officers may have stolen money from the trunk of his car. Contending that Rivera has not pressed the United States Attorney's Office to locate the missing money in exchange for either (1) return of the money after testifying; or (2) a better deal from the Government at his sentencing, the defendants maintain that Rivera clearly is biased and has a motive to testify falsely. *See* Letter from Benjamin Brafman to the Honorable Shirley Wohl Kram of 11/18/93 (the "Brafman Letter"); Letter from Gino Josh Singer to the Honorable Shirley Wohl Kram of 11/19/93 (the "Singer Letter"). Accordingly, the defendants indicate that "Rivera's view of the missing $80,000 is relevant and is proper for cross-examination." Brafman Letter at 15.

Contrary to the defendants' arguments, the Court finds no evidence either that (1) Rivera "previously accused the government of substantial criminal conduct," (2) has backed away from his claim for the missing money, or (3) expects that the money—which would be subject to forfeiture—would be returned to him after testifying. The Court will not reconsider its November 15th Opinion on the basis of pure speculation and hypothesis—hypothesis which would quickly transform this narcotics case into a trial regarding police corruption. *See* 836 F.Supp. at 1013 (citing *United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir.1992) (trial court's preclusion of defendant's cross-examination of government witness upheld where pro-

posed cross-examination involved speculation that informant committed a murder), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993)); *see also United States v. Katsougrakis,* 715 F.2d 769, 778–79 (2d Cir.1983) (trial court properly precluded cross-examination where defense counsel was unable to show a good faith basis for proposed line of questioning), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

Moreover, the Court finds no basis to conclude, as the defendants suggest, that Rivera's bias can only be tested by introducing evidence of the corruption investigation. Rather, the defendants will have an opportunity to challenge Rivera's credibility and possible motive for testifying by cross-examining him about his cooperation agreement with the Government. Thus, the Court's November 15th Opinion in no way deprives the defendants of legitimate avenues for testing Rivera's credibility. *See Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish") (emphasis in original).

Finally, the defendants have not raised any matter or controlling decision which this Court previously overlooked, or in any way challenged the Court's determination that such cross-examination would be (1) clearly beyond the scope of direct examination; and (2) exceedingly more prejudicial than probative. Therefore, defendants' motion for reconsideration is denied.

## II. Cross–Examination Regarding the Corruption Investigation to Show False Allegations

■ Citing new evidence, specifically sixty-one conversations recorded during the corruption investigation, defendants argue that they should be permitted to pursue the defense that some or all of the allegations raised, both in support of the wiretap applications [1] and in the day-to-day Blue Thunder

---

1. As the Court has previously determined both

that there was probable cause to support the

investigation, were fabricated by Robles. According to the defendants, conversations taped at various times during the corruption investigation reveal that Robles threatened to "make allegations against" a confidential informant whom Robles believed was about to turn him in for his criminal acts. *See* Letter from Roger J. Schwarz to the Honorable Shirley Wohl Kram of 11/18/93, at 2. Contrary to the defendants' argument, however, there is no evidence that Robles's corruption is relevant to this case.

While suggesting that Robles may have misrepresented their alleged drug dealing when the Government's wiretap application was submitted, the defendants offer no evidence which indicates that the allegations against them are false. In fact, despite having access to all of the relevant documents from the corruption investigation and having reviewed both the tapes of the monitored conversations as well as the Government's other evidence in this case, the defendants have not pointed to a single incident that the corrupt officers fabricated or any evidence that they were falsely accused.

Second, Robles's credibility is no longer at issue in this case. The Court's November 15th Opinion relies, in part, on the Government's representation that Robles will not be called as a witness, nor will any witness rely on the hearsay of Robles, Beck or Termini as a basis for their testimony. In addition, the Government has (1) moved to dismiss Counts Two, Three, Four and Five of the Indictment, as those counts involve Robles's undercover purchases of heroin; (2) does not intend to elicit testimony from any of its witnesses concerning those undercover purchases; and (3) does not intend to offer at trial any evidence seized during a search or arrest performed by either Robles, Beck or Termini. *See* 836 F.Supp. at 1021–22.

Third, the Government contends that the truth of the allegations made against Colon is corroborated by consensual recordings made by Robles in the presence of other law en-forcement personnel, and that Colon's meetings with Robles during the latter's undercover heroin purchases were observed by other law enforcement personnel. *See* Letter from A.U.S.A. Dietrich L. Snell to the Honorable Shirley Wohl Kram of 11/20/93 (the "Snell Letter"), at 4 n. 3. Accordingly, any testimony regarding Robles's willingness to create false allegations has no bearing on this case as Robles's credibility is not at issue here, and there is simply no evidence that such conduct occurred during the Blue Thunder investigation.

Finally, the Court finds that the defendants' reliance on *United States v. Salerno*, 937 F.2d 797 (2d Cir.1991), *reh. denied*, 952 F.2d 623 (2d Cir.1991), *rev'd*, —— U.S. ——, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992), *on remand*, 974 F.2d 231 (2d Cir.1992), and *United States v. GAF*, 928 F.2d 1253 (2d Cir.1991), is misplaced. In *United States v. Salerno*, the Second Circuit found that the District Court improperly precluded the defendants from questioning or recalling FBI agents who had testified during the Government's case and improperly refused to permit the defendants to present to the jury the Government's opening in a prior case, in which the Government took a position inconsistent with its position at the *Salerno* trial. Similarly, in *United States v. GAF*, the Second Circuit found that the District Court improperly precluded the defendants from introducing the Government's Bill of Particulars, which was inconsistent with the facts alleged at trial.

Here, however, the Government has not changed its version of the facts between the first trial and this retrial. Rather, far from abandoning its contention that the defendants were involved in a drug conspiracy, the Government has simply reduced the number of narcotics charges against Colon and, thus, limited the amount of evidence of his drug dealing. Accordingly, the defendants' right to put before the jury evidence of inconsis-

---

Title III applications, *see* Memorandum Opinion and Order, dated September 4, 1992, at 6–35, and that the Title III wiretap interceptions were properly minimized, *see* Order, dated March 29, 1993, at 14; November 15th Opinion at 10–11, the Court will not revisit its prior determination that the wiretap applications and interceptions were proper.

tent factual allegations made by the Government has not been infringed in any respect.[2]

### III. Beck's DEA–6 Report

■ The Government also asks the Court to reconsider that portion of the November 15th Opinion directing the Government to provide the defendants with "those investigative reports reflecting allegations that Special Agent David Dongilli tampered with certain DEA–6 reports." 836 F.Supp. at 1014 n. 2. Specifically, Beck indicated that, while acting undercover, he obtained Eric Millan's pager number by thumbing through a rolodex on the desk of the secretary of Millan's attorney. Beck's DEA–6 report regarding the incident, however, indicates that Beck observed the pager number in plain view. When confronted with the report, Beck claimed that the report was inaccurate and that he remembered being told by Group Supervisor Johnston that Special Agent Dongilli, as "case agent" for the investigation, would re-write the report. Although the Government is "prepared to disclose those portions of the investigative reports concerning Beck's claim," Snell Letter at 6, it submits that the claim is false and does not constitute proper material for cross-examination. *Id.* at 6–7. The Court finds, however, that such material should be disclosed and is a proper matter for cross-examination.

■ Thirty years ago, the Supreme Court held in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that due process requires the government to provide the defense with any evidence favorable to the accused which is material to either guilt or punishment. Ten years later, in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court expanded *Brady* by requiring that the government provide the defense with any evidence affecting a government witness's credibility. *See also United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In the case at hand, Beck claims that he was told by Group Supervisor Johnston that his version of the events which took place at the office of Millan's attorney were not "suitable" and that the report would be "corrected" by Agent Dongilli. *See* Affirmation of David B. Fein and Michael E. Horowitz, dated June 18, 1993, at ¶ 64. Although Dongilli denies Beck's allegations and the Government contends that Beck is unworthy of belief, "[t]he jury, not the prosecutor, 'has the duty to sift through the inconsistencies of testimony, to weigh the credibility of witnesses and to resolve any ambiguities in the evidence.'" *United States v. Brumel–Alvarez,* 991 F.2d 1452, 1463 (9th Cir.1992) (quoting *Saint Paul Marine Transp. Corp. v. Cerro Sales Corp.,* 505 F.2d 1115, 1119 (9th Cir.1974)). As Dongilli is a key Government witness, and as the corruption investigation files involving Beck's allegations bear on both Dongilli and Johnston's credibility, the Court finds that disclosure of those investigative reports relating to the alleged tampering with the DEA–6 is warranted, and that both Dongilli and Johnston may be cross-examined regarding Beck's allegations. *See United States v. Bravo,* 808 F.Supp. 311 (S.D.N.Y.1992); *see also* Fed.R.Evid. 608(b) ("[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... [may] in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination...."). Thus, despite the Government's contention that these allegations are false, the Court finds that Beck's accusations are an appropriate matter for disclosure and cross-examination.[3]

---

**2.** As defendants Bottone and Coker have not presented any new facts in support of their respective applications for reconsideration of the Court's orders precluding (1) cross-examination of Anthony Damiani regarding the alleged rape of his stepdaughter; and (2) cross-examination of Special Agent Richard Demurjian concerning allegations made in two unrelated civil suits which were since dismissed, the Court summarily denies both Bottone and Coker's motion for reconsideration of these orders.

**3.** Although the defendants have also moved, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for "copies of the transcripts of all of the conversations recorded by Termini, Jose Serrano or any other person who was involved in the corruption investigation; copies of notes of debriefings; copies of the Drug Enforcement Administration Office of Professional Responsibility files that were compiled during said investigation; copies of the debriefing notes of assistant United States attorneys who spoke

## CONCLUSION

The Court has considered the defendants' remaining claims and finds them to be without substantial merit. Thus, for the reasons set forth above, the defendants' motions for reconsideration of the Court's November 15th Opinion are denied. The Government's motion for an Order precluding defense counsel from cross-examining Dongilli regarding Beck's accusation that Dongilli rewrote a DEA–6 report, is also denied. The Government is directed to provide the defendants with all relevant *Brady* and *Giglio* material relating to the DEA–6 report.

SO ORDERED.

---

with Robles, Termini or Beck in the aftermath of their arrests; and all other notes pertaining to the follow up investigations into the conduct or actions of other DETF members who participated in any manner in the 'Blue Thunder' investigation, including but not limited to the monitoring of the wiretaps, the seizure of property or the arrests of any persons allegedly related to the 'Blue Thunder' case," *see* Singer Letter, this request is without merit. In view of the Government's prior assurances that it will disclose all exculpatory evidence in its possession, the defendants are not entitled to inspect reports of interviews with individuals who will not be trial witnesses based on a mere assumption that those documents would be exculpatory. *See United States v. Zuluaga*, 651 F.Supp. 746, 751 (E.D.N.Y.1986); *United States v. Schwimmer*, 649 F.Supp. 544, 549 (E.D.N.Y.1986).